CAPITAL CITY BRICK & PIPE Co., Appellee, v. CITY OF DES MOINES, Appellant.

**Contracts:** CONSTRUCTION: WARRANTY.  A stipulation in a contract for the construction of a bridge, that in case the excavation for abutments should be greater than as shown by the plans and borings furnished by the city, additional compensation should be allowed for the extra labor and material used in making a suitable foundation, amounted to a warranty that the work was as represented and a liability was thereby created for the extra expense.

**Same:** EXTRAS: MEASURE OF RECOVERY.  Where the contract for the construction of a bridge determines the character of possible extra labor and material and the measure of recovery therefor, evidence of other expenses and losses of a different character and origin than those referred to in the contract should be excluded.

**Same:** MODIFICATION OF CONTRACTS.  Where one of the parties to a contract refuses to concur in the instrument as originally drawn and to meet the objection an addendum which expressly modifies or abrogates some provision in the original instrument is prepared and made a part of the agreement, such added matter will be given effect by the court so far as inconsistent with the agreement as originally drawn.

**Subcontract:** ABANDONMENT: RIGHT OF CONTRACTOR.  Where a subcontractor abandons the work and surrenders the management and control thereof to the contractor, who completes the same, the contractor may recover any loss or damage which he sustains from carrying out the contract for which the other party is liable.

**Instructions:** REVIEW ON APPEAL.  The trial court is required to give necessary and proper instructions on all the issues joined in an action which goes to the jury, whether requested or not, and failure to instruct thereon with reasonable fullness is a prejudicial error which may be reviewed on appeal.

**Same:** MUNICIPAL CONTRACTS: BREACH.  It is competent for a city in contracting for the construction of a bridge to provide that

before final settlement all claims against the city growing out of the performance of the contract shall be presented and adjusted; and where a breach of this condition is alleged in defense to a suit for extras and the evidence is such that the fact of presentation of such claims cannot be determined as a matter of law, failure to submit the issue under proper instruction is prejudicial error.

*Appeal from Polk District Court.*— HON. HUGH BRENNAN, Judge.

MONDAY, NOVEMBER 18, 1907.

The opinion states the case.— *Reversed.*

*W. H. Bremner, M. H. Cohen* and *W. M. McLaughlin,* for appellant.

*Read & Read* and *Woodin & Ayers,* for appellee.

WEAVER, C. J.— Under a written contract with the defendant city, the plaintiff constructed a bridge across the Des Moines river. After the completion of the work and the payment of the stipulated price, this action was brought to recover for extra work and extra material which it was alleged the city by its proper officers had required or requested the plaintiff to furnish beyond and in excess of the labor and material required by the plans and specifications under which the contract was performed. The alleged cause of action is stated in three counts. The case as made by the first count is, in substance, that the plans and specifications upon which the plaintiff made its bid and upon which it entered into the contract represent that the city had already made borings at the site of the bridge, and thus located the surface of the solid rock or foundation upon which the bridge was to be erected. It was further stipulated that in case the surface of such rock should be found to be other than as shown by the plans and borings referred to, and the party of the first part was thereby put to extra labor, work,

and material in order to make a suitable foundation, the plaintiff should be compensated therefor. It is alleged by plaintiff that on undertaking to put in the foundations for the bridge, it was found that the borings referred to were not a true indication of the condition of the earth and rock, and, further, that, on making excavations to the rock strata, the defendant city refused to permit the plaintiff to erect piers thereon until at great extra expense and labor excavation had been made in said rock to an additional depth of several feet.

In the second count of the petition, the same matter is stated, though in somewhat different form, and it is further alleged that in making its bid and entering into its contract for the erection of the bridge, plaintiff relied upon the representations made by the officers and the agents of the city as to the character of the soil and the distance from the surface to a suitable rock foundation, which representations afterwards proved to be untrue and misleading, thereby causing the plaintiff great damage.

The third count set up a claim for damages because of a suspension of the work by order of the officers and agents of the city, but this claim was by the trial court withdrawn from the consideration of the jury, and we need not further consider it.

The fourth count of the petition states that the contract plans and specifications called for the use in constructing the bridge of a large quantity of iron ribs one-fourth of an inch in thickness, and that, after the work had been entered upon, the defendant's officers and board of public works requested and required the plaintiff to make use of iron ribs of a thickness of three-eights of an inch, instead of one-fourth inch, as required by the plans, and that the additional cost and value of the iron thus used amounted to a large sum, for which recovery is sought. The defendant denies each and all of the claims thus made against it, and alleges that plaintiff has waived its right to assert such claims, and that

the action thereon is barred by the failure of plaintiff to present them to the board of public works of the city of Des Moines prior to the final settlement between the parties, as it was required to do under the terms of the contract. There was a trial of these issues to the court and jury, and a verdict returned in favor of plaintiff for the sum of $12,075. The defendant's motion to set aside the verdict and for a new trial was overruled; and, judgment being rendered on the verdict, the defendant has appealed.

While the record transmitted to this court is very voluminous, the material questions presented by the appeal are comparatively few so far as the merits of the controversy are concerned. The arguments of counsel are largely devoted to the claim stated in the first and second counts of the petition growing out of the alleged extra labor and expense occasioned by the character of the soil and rock through which excavation was made for the foundation of the bridge. The specifications upon which the contract was at first prepared contained a clause in the following words: " (4) Survey. The site of the structure has been carefully surveyed and marked on the ground for examination. Five borings have been made on the center line of the structure and as shown on the plans." It further provided that the excavation for abutments and piers should be carried to solid rock. In the body of the contract, as distinguished from the specifications, is also found the following clause:

The said party of the first part further agrees to perform said work in strict accordance with this contract, and with the plans and specifications hereinbefore referred to, for the sum of seventy-four thousand nine hundred dollars ($74,900), which shall be in full compensation for the cost of the entire work; and the city of Des Moines shall not be liable to the said party of the first part for " extras " of any kind, nor for any damage which he may sustain by coming in contact with rock, sand, water or any other unforeseen material or obstruction, nor for any damage by the elements before the work is completed and finally accepted by

the city, nor for delays in the completion of said work except as herein otherwise provided; it being expressly understood that the contract price above specified shall be in full for all work and material furnished under this contract.

When the contract was submitted for the signatures of the parties, some difference of opinion was disclosed as to the meaning and effect of the original draft of the instrument, and, after considerable discussion, there was added thereto certain provisions entitled " addenda;" among which was the following:

The plans and specifications for the bridge show that five (5) borings have been made by the city of Des Moines locating the surface of the solid rock for the foundation.   It is agreed that in case the surface of said rock is found to be otherwise than as shown by the plans and borings, and the party of the first part is put to extra labor, work, and material in order to make a suitable foundation, then the party of the first part shall be compensated for the extra work and material as provided in the specifications for the compensation of extra work upon the order of the city engineer; but, if the cost to the contractor is less than that of the construction, as shown by the plans and specifications, the amount of the difference shall be deducted from the contract price.

Both the principal draft of the contract and the addenda above mentioned were then duly executed by both parties, and, with the plans and specifications therein referred to, constituted the final agreement under which the bridge was constructed.   The blueprints or copies of the plans furnished by the city to the appellee purport to contain a showing of the borings which had been made at the sites of the abutments and piers and to indicate the character of the earth through which the excavations were to be made, and the depth at which the rock for the foundation would be reached.   This showing the plaintiff claims was incorrect and misleading, and that the excavation developed material much more difficult to work, thereby causing in-

creased and unexpected expense in removing the same. Complaint is also made that, when the appellee had carried the excavation down to a solid rock foundation, such as was reasonably contemplated by the contract, the city, by its officers and engineers, insisted that the rock itself should be excavated to an additional depth, and that, in compliance therewith, appellee did extend the excavation to a considerable distance into the rock in excess of the requirements of the contract, which work it is alleged was of a very expensive and difficult character, requiring the expenditure of a large amount of money, for which the city should reimburse the appellee in addition to the stated contract price. There was evidence tending to support this claim, although the amount and value of the extra labor and expense thus incurred is a subject of dispute. Upon this feature of the controversy, the trial court instructed the jury in the following language:

The material question as to counts 1 and 2 of the petition, which you are called on to consider in relation to said contract, is the character of the material which was necessary to be excavated in order to reach the rock upon which the foundation was to be laid, as shown by the contract, and as actually found during the work. You are instructed that where parties have entered into a contract with reference to a certain state of fact within the knowledge of one party, and upon which the other entirely relied, and the one having the knowledge represented and stated in said contract certain facts to be true, and you find the same were material facts, then and in that case the party so stating and representing such material facts shall be bound by them. And in this case if you find that the plaintiff bid upon the work named in said contract with reference to the plans and specifications, and, relying upon said plans and specifications to be true and correct, he made his bid and entered into the contract referred to, and you further find that the representations on said plans were not true and correct, then you will further inquire and determine from the evidence whether, by reason of such difference, the work of making the excavations for abutments and piers was thereby rend-

ered more expensive.  And, if you find that it was, you will then proceed to determine from the evidence the difference between what it would have cost to do said work, if the conditions had been as represented by the contract, and the reasonable and necessary cost of doing the work, under the conditions that you find existed, as shown by the evidence. In ascertaining such difference, you will take into consideration the additional labor and material, if any, necessary to do said work, as the conditions existed.  And, if you find as above stated, you will allow plaintiff such difference, if any you so find, not exceeding the amount claimed in the first and second counts, to-wit, $23,314.23.

It is the contention of the appellant in this court that the record discloses no warranty or representation by the city as to the character or kind of material which would be encountered in making the excavations, and that the trial court was therefore in error in submitting the question to the jury for its verdict thereon.  It is said that the language employed in the contract plans and specifications is, at best, a mere expression of opinion, and that the appellee was not justified in relying thereon; or, if he did rely thereon, any loss thereby occasioned would not constitute a cause of action against the appellant.  To hold this point well taken would be to destroy a very material condition of the written agreement.  It will be remembered that, as the contract plans and specifications were first prepared, the only reference made therein to the nature or character of the excavation was that the site of the structure had been carefully surveyed and marked on the ground for examination, and that five borings had been made on the center line of the structure as shown on the plans.  Had the contract been executed in this form, the point now made by the appellant could not well be avoided, and we should be inclined to hold that there was no representation or warranty, for the breach of which damages could be recovered.  But this fact would seem to be the very point, or one of the points of objection which

1. CONTRACTS:
construction:
warranty.

led the appellee to refuse to execute the instrument until it had been modified by the so-called addenda, in which, after again referring to the borings which had been made by the appellant, it was expressly agreed that in case the surface of the foundation rock was found to be otherwise than as shown by the plans and borings, and appellee should be put to extra labor, work, or material in order to make a suitable foundation, then the city should pay therefor. Taking all these provisions together, we see no escape from the conclusion that the city undertook to and did represent to the contractor that it had by the borings referred to, investigated and ascertained the nature of the excavation which would have to be made, and that the same were fairly represented by the borings recorded upon the plans. Such a representation relied upon by the other party is essentially a warranty, and if, on coming to perform the work, it was found that this warranty was not borne out by the facts, and that the excavation was materially more difficult and expensive than it would have been had such warranty been fulfilled, recovery may be had for the breach. The instruction given by the trial court was in harmony with this rule, and we think it correct.

In *Slusser v. Burlington,* 47 Iowa, 300, this court had to deal with a case involving a claim not materially unlike the one which appellee herein asserts in the first and second counts of its petition. In that case the plaintiff entered into a written contract to excavate a portion of a street of the defendant city at a fixed price per cubic yard. After the work had been done, the plaintiff brought action to recover a sum in excess of the contract price, claiming that, before making the contract, the city by its engineer had pointed out the depth of the excavation which would be required to reach the established grade, and that, relying upon such representations, plaintiff had made his bid and taken the contract and entered upon the work. It is further alleged that said representations were not true, and that the

established grade was much lower than represented by the engineer, and that below the line pointed out by such officer the material to be excavated was of a harder and more difficult character, and that the reasonable value of removing the same was much in excess of the contract price. The evidence tended to sustain the claim thus made, and plaintiff was allowed to recover. The trial court there instructed the jury in substantial accord with the rule given to the jury in the case now before us, and, in affirming the judgment, this court said: " When one in honest error asserts that which is not true, and does it for the purpose of influencing another who in good faith trusts to and acts upon it, he that made the mistake shall not correct it for his own benefit, to the injury of the party who was deceived by his assertion." The cited case presents a less favorable showing for plaintiff than does the one at bar, because in the latter the written contract clearly contemplates the possibility that the representation as to the character of the excavations might prove to be incorrect, and undertakes in express terms to secure the contractor against loss therefrom.

In announcing this conclusion, we do not undertake to pass upon the question whether the representations made in the contract and specifications were, in fact, incorrect, or, if incorrect, the amount of damage, if any, which the appellee thereby sustained. In view of the fact that for reasons hereinafter

2. SAME: extras: measure of recovery.

stated a new trial must be ordered, it is proper for us to say, however, that considerable evidence was permitted to go to the jury, and not withdrawn from its consideration, concerning items of alleged damage, injury, and expense which in our judgment cannot be made a basis of recovery against the city. Referring again to the written contract with reference to this particular matter, it must not be overlooked that the thing which the city undertook to do was that in the event the surface of the rock was found to be otherwise than as shown by the plans and borings, and the con-

tractor was put to extra labor, work, or material in order to make a suitable foundation, then the contractor was to be compensated therefor. The parties have thus provided the basis and measure of damages which may be recovered. If, therefore, as some of the evidence tends to show, the appellee in making the excavations encountered rock or shale, instead of clay or other material more easily worked, as shown on the profile of the borings, the amount of extra expense reasonably incurred in making a suitable foundation therein would be the limit of the recovery under this clause of the contract. It follows, therefore, that, so far as the appellee's right of recovery is based upon the first and second counts of the petition, evidence of other expenses and losses of a different character or having a different origin than those to which reference has been made should be excluded.

Before leaving this branch of the case, we will refer to the point suggested by the appellant that the reference in the contract to the borings and to the right of the appellee if the showing thereby made proved to be

3. SAME: modification of contracts.

misleading can have no force or effect because of the so-called "no extra clause" which we have already quoted. It is true that the clause last referred to provides in sweeping terms that the city shall not be liable for extras of any kind, nor for any damage which the contractor may sustain by coming in contact with rock, sand, water, or any other unforeseen material or obstruction, and, were this language alone to be considered, it would probably be a sufficient answer and defense to the appellee's claim; but the addendum attached to the contract and made a part thereof and the history of its origin conclusively show that the "no extra" clause was intended to be abrogated or limited in so far as the added matter was inconsistent therewith, and such effect must be given it by the court.

II.    It appears that appellee sublet this contract to

one Stone, and counsel for the appellant advance the proposition that no recovery can be had in this case because, if

4. SUBCONTRACT: abandonment: right of contractor.

any loss or damage was sustained, it was that of the subcontractor, and not of the appellee. The subcontractor had not proceeded far in the execution of the work until he became unable to carry it on without assistance, and the appellee was compelled to furnish the money and take care of the bills for labor and materials used in the prosecution of the work, and in the end, as we understand the record, the work was abandoned by Stone and surrendered to the management and control of the appellee; and, if any loss was sustained for which the city was liable, we are of the opinion that the appellee, as principal contractor, is the party entitled to recover.

III.   The contract in suit provides that payment for labor and material furnished shall be made upon estimates of the city engineer and approved by the board of public

5. INSTRUCTIONS: review on appeal.

works from time to time during the progress of the construction of the bridge, less 15 per cent. from each and every estimate which is to be retained by the city until the completion and final acceptance of the work, and that, upon such completion and final acceptance, the sum then remaining due shall be, paid within sixty days.   Following this provision is a clause to the effect that all claims against the city for damages growing out of the performance of the contract must be presented to the board of public works by the contractor, and such claim must be adjusted and settled, and a release in full for all damages against the city must be executed by the contractor before the estimates above provided for will be allowed, and that any claim not so presented shall be deemed waived, and action thereon barred.   The appellant in its answer pleads this clause and provision of the contract, and alleges that the appellee neglected and failed to present the claims now sued upon to the board of public

works and procure a settlement thereof before the approval
and payment of the engineer's estimates, or before the final
payment and settlement of the contract price of the bridge,
and that appellee's right of action thereon, if any ever ex-
isted, was waived, and no recovery can now be had thereon.

Evidence was offered on the trial upon the question
whether this provision of the contract had been complied
with.   It was also, at the close of plaintiff's testimony, made
the ground of a motion for a directed verdict in the defend-
ant's favor, and was one of the grounds of defendant's mo-
tion for a new trial after the return of the verdict.   The
trial court in its statement to the jury of the issues in the
case recites this as one of the defenses pleaded to the ap-
pellee's claim, but nowhere in the charge is any further refer-
ence made to such issue, and the jury were given no direc-
tions as to the law governing the same.   Error is now as-
signed upon this omission by the trial court.   It is argued
by the appellee that this objection, even if well founded as
an original proposition, was waived by the appellant, be-
cause it failed to make specific request that the jury be in-
structed upon that issue.   In support of this position,
we are cited to several cases decided by this court.   None
of them are in point.   *Cox v. Allen,* 91 Iowa, 463, and *Hall
v. Manson,* 90 Iowa, 585, do no more than announce the
well-established rule of practice that such objection cannot
be raised for the first time in this court, while *Parmateer
v. Bass,* 113 Iowa, 68, and *Hall v. Railroad Company,* 115
Iowa, 18, clearly restate the well-settled rule that, where an
instruction upon any issue submitted to the jury is correct
so far as it goes, failure to give further or more specific in-
structions upon such point will not be held error in the ab-
sence of any request therefor by the appellant.   But it has
often been held that the trial court is bound to see that in
every case which goes to a jury they have clear and intelli-
gent notions of the point which they are to decide, and to
this end should give necessary and proper instructions upon

all the issues joined, whether they are requested by counsel or not, and failure to instruct with reasonable fullness thereon is prejudicial error. *Owen v. Owen,* 22 Iowa, 270; *Hall v. Railroad Co.,* 115 Iowa, 18; *Potter v. Railroad Co.,* 46 Iowa, 399; *Kennedy v. Rosier,* 71 Iowa, 671; *Hill v. Aultman,* 68 Iowa, 630.

It is next said in support of the verdict and judgment that the presentation of the claim to the board of public works was proved and established by such conclusive and

6. Same: municipal contracts: breach.

undisputed testimony that the failure of the trial court to submit the issue to the jury, if error, was without prejudice, and affords no ground for a reversal. We do not so read the record. Final settlement between the parties as to the contract price for the construction of the bridge and payment of the balance due thereunder was made some time during the month of May, 1904; the exact date not being disclosed. The principal witness for the appellee on the trial, who was apparently also the general manager of its affairs in connection with the construction of this bridge, did testify in general terms that its claims now in suit were presented to the board of public works, but, on being examined more specifically as to the fact, said: " April 27, 1904, I filed this claim with W. W. Wise, of the board of public works." Again he says: " I filed a claim with Mr. Wise on April 18, 1904. I met him on Seventh street about one hundred feet north of Park street, and told him I wanted to file that claim with the board, and handed it to him. I went down to his office a couple of days after that and talked to him about the claim, and he said he had it there, but did not see what business it was of his, as it was already before the council. I do not know whether he had filed it with the board or not. Previous to that time I had filed a claim with the city. The two claims were exact duplicates. The board of public works has never given me any report or answer in reference to the claim I filed." Mr. Wise, who at the date

mentioned was a member of the board of public works, testifying upon the same subject, says: " I have no recollection of ever having met Mr. McGorrisk about the 18th day of April, 1904, and of his handing me a claim against the city. I have no recollection of Mr. McGorrisk's ever having handed me a claim in relation to or for extras or damages in connection with the construction of the Sixth Avenue Bridge." On cross-examination, he states that, as a member of the board of public works, he knew that Mr. McGorrisk was asserting a claim against the city growing out of the construction of the bridge, and had talked with him about it at different times. He also said that he did not wish to be understood as saying that such a claim had not been lodged with the board, but simply that he had no recollection of it. J. W. Campbell, another member of the board of public works, testifies that he has no knowledge of such claim having been filed with the board. He says that Mr. McGorrisk told him at one time that he was going to file such claim, and that such conversation was had in the office of the board. Mr. Frisk, who was clerk of the board of public works at the time in question, and had continued in the office up to the date of the trial, testifies: " There was a claim filed with the board of public works by the Capital City Brick & Pipe Company some time in the spring of 1904, just at what time I cannot say. The claim related to the Melan Arch Bridge. It was sent up to the city council. I do not know the exact date of the claim. I know that it was sent up to the council with a communication from our office." On cross-examination, however, he identifies the claim concerning which he had spoken as being the claim of the appellee for the remainder of the contract price for the construction of the bridge, and says that, after a thorough examination of his office, he finds nothing to indicate that the claim now in suit had ever been filed there. He further said that, according to the usual routine of his office, when such a claim has been filed and approved,

it is then filed with the city auditor, but, if not approved, it is either held by the board or sent to the city council. Conceding, for the purposes of this appeal, that the testimony here referred to is sufficient to sustain a finding by the jury that the claim in question had been presented to the board of public works, the question is certainly not so free from doubt that the court would be justified in reaching that conclusion as a matter of law, and withhold the issue from the jury. Handing a written claim to a member of the board on the street or in his private office is not of itself a presentation to the board.

We are thus brought to the consideration of the single question whether, had this issue been properly submitted to the jury and the verdict thereon had been in favor of appellant, it would afford a sufficient defense to appellee's claim. It was entirely competent for the parties in making their contract to hedge the possibility of claims for extra compensation with all such reasonable restrictions as they might devise or agree upon. Experience has shown that such claims are the fruitful source of controversy and litigation, and it was not unreasonable to provide that, before the final settlement and payment of the contract price, the contractor should present to the proper authority its claims of every kind growing out of the work which it had undertaken to perform, and to make its right to insist upon such claim and enforce payment thereof dependent upon such presentation being made within the limit of time thus fixed. The defense based upon this provision of the contract was therefore valid and sufficient, and, if established upon the trial, entitled the defendant to a verdict and to be discharged with its costs. Whether that defense was thus established was a question for the jury, and, in failing to submit it with proper instructions, there was prejudicial error, because of which a new trial must be ordered.

Other questions argued by counsel will not necessarily

be involved upon another hearing, and we shall not further consider them.

For the reasons stated, the judgment of the district court is *reversed.*