CAPITAL CITY BRICK & PIPE COMPANY, Appellant, v. CITY OF DES MOINES, Appellee.

**Municipal corporatons:** PUBLIC IMPROVEMENT: CONTRACTS: EXTRA
1 COMPENSATION. Where a contractor's bid for the construction of a bridge is made upon plans and specifications furnished by the municipality, containing a survey of the site with borings indicating the different soils to be encountered in excavating for piers and abutments, the contractor is entitled to extra compensation for extra work in excavating rock not shown by the borings, unless that right has been abrogated by a subsequent contract for the work.

**Same:** CONTRACT: WHEN CONCLUDED. Where the right to reject all
2 bids for a public improvement is reserved in the notice for proposals, a binding contract is not created until there has been an acceptance of the same and approval of the contractor's bond by the municipality.

**Same:** ALTERATION IN CONTRACT: VALIDITY. In this action the notice
3 for bids advised that sealed proposals would be received until

a certain date, according to plans on file, and that payments would be made for the work in accordance with a contract, a draft of which would be on file on or before that date. The plans showed borings indicating different kinds of soil to be encountered in excavation for the work. The contract contained no more favorable provision to the successful bidder than that referred to in the notice for bids, unless it was a provision for extra compensation in case the borings did not show the true condition of the earth to be excavated, which was inserted in the contract of the successful bidder, who had not seen the proposed contract prior to filing his proposal. *Held,* that this provision for extra compensation was not a modification of the proposed contract arising on the acceptance of the contractor's proposal under the plans, and therefore to his special benefit to the exclusion of other bidders, but was simply an agreement as to how the damages should be determined in case the city had not correctly represented the nature of the ground to be excavated, and could be made after the consummation of the contract as well as before.

**Same:** RIGHT TO EXTRA COMPENSATION. A general provision in a contract for the construction of a public improvement to the effect that the municipality will not be liable for extras of any kind, nor for damages sustained by encountering any unforeseen obstacle, will not preclude the right of the contractor to extra compensation growing out of any misrepresentation of the municipality as to the character of the work.

**Same:** WAIVER OF RIGHT TO EXTRA COMPENSATION. Where, by the terms of a contract for the construction of a public improvement, all claims against the city must be presented to the board of public works before estimates will be allowed or other payments made under the contract, and any claim not so presented by the contractor shall be deemed waived, a failure of the contractor to present a claim for extra compensation, until after estimates and payments were made and the work was completed, was a waiver of the right to such claimed extra compensation.

**Same:** FAILURE TO FILE CLAIM IN TIME: WAIVER BY MUNICIPALITY. A waiver of the time for filing a claim for extra compensation as above provided is not established by a mere showing that the contractor filed the claim after the time provided in the contract; that the city council referred the claim to a committee; or that the contractor voluntarily appeared in person or by counsel before the committee or city council and urged the allowance of the claim, unless it is shown that he was invited to do so, or incurred some expense in the belief that failure to file in time would not be insisted upon.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

WEDNESDAY, JULY 11, 1911.

ACTION to recover for labor and material furnished by plaintiff for the construction of a bridge over the Des Moines river. Directed verdict for defendant, and plaintiff appeals. *Affirmed.*

*Read & Read* and *Woodin & Ayres,* for appellant.

*R. O. Brennan, H. W. Byers,* and *Eskil Carlson,* for appellee.

PER CURIAM.—The case was before us on a former appeal, the opinion being found in 136 Iowa, 243. From the opinion in that case, in which a judgment in favor of the plaintiff was reversed, it appears that the reversal was based on the ground that the trial court failed to submit to the jury the question whether plaintiff's claim was presented to the board of public works in accordance with the provisions of the contract before the allowance and payment by the city of the final estimate under the contract; it being provided in the contract as follows: "All claims against the city of Des Moines for damages growing out of the performance of this contract, or for any tort, or alleged wrongful act of the city, shall be presented to the board of public works of the city of Des Moines by the party of the first part, and such claims must be adjusted and settled and a release in full for all damages against the city must be signed by the party of the first part, before the estimates above specified will be allowed, or other payments made under this contract, and any claim not so presented shall be deemed waived and action thereon barred." There was in the contract a provision quoted in

full in the former opinion to the effect that the specified contract price should be in full compensation for the cost of the entire work, and the city should not be liable to the party of the first part for extras of any kind, nor for any damage which it might sustain by coming in contact with rock, etc., or any other unforeseen material or obstruction; it being strictly understood that the contract price specified should be in full for all work and material furnished under the contract. But, as pointed out in the former opinion, there was an *addendum* to the contract in which it was agreed that in case the surface of the rock was found to be otherwise than as shown by the plans and borings represented in the proposal for bids, and the first party was put to extra expense in order to make a suitable foundation, then said first party should be compensated for such extra work as provided in the specifications for the compensation of extra work upon the order of the city engineer. In the former opinion it was held that the compensation for which plaintiff sued on account of extra work rendered necessary by the fact that there was rock to be removed before reaching bed rock for the purpose of laying the foundations of the abutments and piers not shown by the borings was recoverable under this *addendum*.

The contentions for the city now are that, first, this *addendum* was added to the contract without authority of law; and, second, that, even if this *addendum* was valid, the claim for compensation thereunder was not presented to the board of public works as required by the portion of the contract above set out.

The argument that the *addendum* was invalid is predicated upon the thought that the rights and liabilities of the plaintiff must be determined by the plans and specifications under which its bid was made, and that it was not competent afterwards to add to or vary such rights or liabilities by mutual contract between the parties. It may be conceded that under statutes requiring contracts

to be let to the lowest bidder the city council can not substantially vary the terms and conditions of a contract entered into under competitive bids, for to do so would be to destroy the advantage intended to be secured by such method of entering into the contract. *Hedge v. Des Moines,* 141 Iowa, 4. The legal notice for proposals for bids for the work in question given by the board of public works under authority of the city council advised prospective bidders that sealed proposals would be received by the board at its office in the city hall until 10 o'clock a. m. on the 14th day of December, 1901, for the described improvement, "according to plans and specifications to be found on file in the offices of the city engineer and the board of public works after December 1, 1901." The only reference in this notice to any contract was in a provision that payment for the work was to be made in warrants drawn on the bridge fund "in such amounts and at such times as are specified by the terms of the contract therefor, a draft of which may be found on file in the office of said board of public works on or before the 14th day of December, 1901." It is evident that the sealed proposals were to have reference to the plans and specifications, and not to the contract, save as to amounts and times of payment, and the obligations of the plaintiff under its bid must be determined by the bid itself and the plans and specifications. In the plans and specifications it was provided that the site of the structure would be carefully surveyed and marked on the ground for examination by borings made on the center line of the structure as shown on the plans, and that the foundations for the abutments and piers should be carried to solid rock. The plans showed five borings, and indicated the different kinds of soil which had been encountered in excavating for the piers and abutments as shown by these borings.

When, therefore, the plaintiff on the acceptance of

its bid proceeded with the work, and in excavating for the piers and abutments encountered rock which it was nec-

1. Municipal corporations: public improvement: contracts: extra compensation.

essary to remove which had not been indicated in the description of the borings, it was entitled to compensation for the extra expense involved, unless the right to such compensation was in some way cut off or forfeited under the terms of some valid contract entered into between the parties after the bids were made.

The acceptance of the plaintiff's bid by defendant city, which constituted the conclusion of a contract between the parties (for the city had reserved the right

2. Same: contract: when concluded.

under the notice for proposals to reject any and all bids), consisted of the action of the council in approving the contract and bond of the plaintiff, which contract contained the *addendum* already referred to, added to it after the plaintiff's sealed proposals had been signed. Now, it is clear that until the contract was approved plaintiff's bid had not been accepted, and that the contract, as approved, constituted the only contract under which the plaintiff could proceed with the work, or the defendant could insist on the work being done; and the only question involved in the modification of the form of the contract was as to whether in its terms it so far departed from the plans and specifications that it was more favorable to the plaintiff than the contract which would have arisen by the simple acceptance of the plaintiff's proposal, without reference to the terms of the contract.

As has already been indicated, while the plans and specifications were to be on file on and after December 1, the contract was not to be on file until December 14, on which day, at 10 o'clock a. m., the sealed proposals must be on file, and it is not to be assumed that the sealed proposals were to be made with reference to the terms of the contract except as to amounts and times of payment.

It was no doubt competent, however, for the city before accepting plaintiff's proposals to require that a contract be entered into as to details and other collateral matters which could not have been fully covered by the proposals and the plans and specifications. However this may be, it is not contended that the contract is invalid, unless it is so because it contained terms more favorable to the plaintiff than those under which it would have been obliged to prosecute the work if its proposals had been accepted without reference to any such contract.

The contract, which it may be assumed was on file December 14, although, as testified by the officer of the plaintiff who transacted the business for it, such contract was not seen by him prior to the filing of his proposals, does not appear to contain any provisions more favorable to the plaintiff, unless it may be in the provisions of the *addendum,* as already indicated, containing the provision that in case the surface of the foundation rock was found to be otherwise than as shown by the plans and borings, and the party of the first part should be put to extra labor, work, and material in order to make a suitable foundation, then said party should be compensated for such extra work and material as provided in the specifications for the compensation of extra work on the order of the city engineer. As already suggested, the city would have been liable without any contract for the extra expense resulting from the finding of rock above the bed rock indicated in the borings, and which would have been indicated, had the representation as to what was disclosed by such borings been truthfully made. Therefore the provisions above referred to in the *addendum* related not to the obligations of the contract, but to obligations of the city which might arise from a breach of its contract or warranty that the borings truthfully disclosed the conditions represented. This was not then a modification of the contract arising

3. SAME: alteration in contract; validity.

on the acceptance of the plaintiff's proposals under the plans and specifications, but an agreement as to how the damages accruing to the plaintiff out of a failure to represent correctly to it the conditions which should have been shown by the borings should be determined. We see no reason why such a stipulation might not have been entered into between the parties at any time. It did not relate to the obligations assumed by the plaintiff in its proposals. We reach the conclusion, therefore, that the *addendum* did not contain terms more favorable to the plaintiff than those which were involved in its proposals for the work.

We now come to the question whether under the contract plaintiff was entitled to any additional compensation, and, if so, whether its claim for such compensation was duly made.

IV. The provision in the contract, that the agreed sum of $74,900 should be in full compensation for the cost of the entire work, and the city should not be liable to plaintiff for extras of any kind, nor for any damage it might sustain in coming in contact with rock or any other unforeseen material, was evidently a general provision not intended to cut off the right of plaintiff to extra compensation for expenses resulting from a misrepresentation on the part of the city as to what was shown by the borings; but whatever its effect, as pointed out in the former opinion, it was modified by the provisions of the *addendum;* and, while in the *addendum* such additional expense was to be treated in regard to estimation and claim therefor as an "extra," appellant claims that it was not that kind of an "extra" contemplated by the other provisions of the contract. The contention of the appellee in this respect is that a claim therefor should have been filed with the board of public works before final settlement and payment of the contract price by the city. The provision of the contract is that

<div style="margin-left:2em">4. SAME: right to extra compensation.</div>

"such claims must be adjusted and settled and a release in full for all damages against the city must be signed by the party of the first part before the estimates above specified will be allowed, or other payments made under this contract, and any claim not so presented shall be deemed waived and action thereon barred." On the former appeal we expressly held that plaintiff was required to present its claim to the board of public works and such claim should be adjusted and settled, and a release in full for all damages against the city should be executed by the contractor, before the plaintiff would be entitled to any estimates from the city engineer and the board of public works during the progress of the work. But it was also held that these provisions might be waived. After quoting from the testimony with reference to plaintiff's compliance with the provision of the contract and on plaintiff's claim of waiver, we said in the former opinion:

Conceding, for the purposes of this appeal, that the testimony here referred to is sufficient to sustain a finding by the jury that the claim in question had been presented to the board of public works, the question is certainly not so free from doubt that the court would be justified in reaching that conclusion as a matter of law, and withhold the issue from the jury. Handing a written claim to a member of the board on the street or in his private office is not of itself a presentation to the board. We are thus brought to the consideration of the single question whether, had this issue been properly submitted to the jury and the verdict thereon had been in favor of appellant, it would afford a sufficient defense to appellee's claim. It was entirely competent for the parties in making their contract to hedge the possibility of claims for extra compensation with all such reasonable restrictions as they might devise or agree upon. Experience has shown that such claims are the fruitful source of controversy and litigation, and it was not unreasonable to provide that, before the final settlement and payment of the contract price, the contractor should present to the proper authority its claim of every kind growing out of the work which it had undertaken to

perform, and to make its right to insist upon such claim and enforce payment thereof dependent upon such presentation being made within the limit of time thus fixed. The defense based upon this provision of the contract was therefore valid and sufficient, and, if established upon the trial, entitled the defendant to a verdict and to be discharged with its costs. Whether that defense was thus established was a question for the jury, and in failing to submit it with proper instructions there was prejudicial error, because of which a new trial must be ordered.

On the second trial of the case, after the reversal here, the trial court held as a matter of law that plaintiff did not comply with the provisions of the contract before quoted, and that no waiver on the part of the city or the board of public works was shown. The first appeal was by the city, and this one is by the plaintiff. It was not necessary on the first appeal to say whether or not the plaintiff had in fact complied with the terms of the contract, for in that case it did not appear that any intermediate estimates were made nor were any relied upon. It was enough to find a conflict in the testimony or in the inferences to be drawn therefrom to take the case to the jury. Nothing was said on the former appeal on the question of defendant's waiver of these provisions of the contract manifestly intended for its benefit. Moreover, when the case was first before us, it did not appear that several estimates had been made and warrants issued after the accrual of plaintiff's claim. The only estimate shown or relied upon in that case was the final one. In the former case, as in this one, plaintiff pleaded a waiver on the part of the city of the provisions of the contract with reference to the filing of claims for extras; and, while nothing was said in the former opinion regarding this issue, it is manifest that nothing was involved on that appeal save the question of waiver of the filing of the claim before the final estimate was made.

In this connection it may be well to say that the

former opinion conclusively settles the proposition that plaintiff's present claims are to be treated as extras, and not as part of the original contract price. It now appears without controversy that the bridge was finally accepted and payment made of the balance of the contract price on May 26, 1904. As said in the former opinion, if there was any filing of the claim with the board of public works, it was on or about April 27, 1904. Plaintiff claims, however, that he filed his claim with the city clerk and presented it to the city council on or about July 18, 1903. We shall have something more to say on this proposition later. It is conceded that the larger part, if not all, of plaintiff's claim for extras, accrued on or prior to November 8, 1902. The record on the last trial conclusively shows that estimates were made and warrants paid thereon in December of the year 1902, in February of the year 1903, and again in May of the year 1903. This was done after nearly all claims for extras had accrued according to plaintiff's own version of the contract, and before there was any presentation of any claims for extras to the city council. The alleged filing with the board of public works was not until April of the year 1904. Several other estimates were made and warrants issued before the alleged filing of the claim with the board of public works, to wit, one in October of the year 1903, and another in November of the same year; the total amount paid under these latter estimates being over $17,000; the final payment on May 26 being $14,915.52. We find the following record of the proceedings of the city council with reference to the claim which plaintiff filed with that body in July of the year 1903: "Under date of August 3, 1903, as follows: 'Communication from the Capital City Brick & Pipe Company claiming of the city of Des Moines the sum of $28,508.99 as additional and extra compensation agreed to be paid to them under its contract with the city of Des Moines dated

*5. SAME: waiver of right to extra compensation.*

December 18, 1901, for the construction of the Melan arch bridge over the Des Moines river at Sixth avenue for said city, presented. On motion of Higgins referred to Solicitor and Bridge and Sidewalk Committee and Claims Committee.' "

There is testimony tending to show a presentation of this matter to the committee to which reference was made. It is substantially as follows: One of plaintiff's witnesses testified:

The Capital City Brick & Pipe Company made claim for compensation in addition to the contract price before the bridge was completed, and about the time of the completion of the bridge in 1903. The statement of the claim amounting to at that time $28,000, was presented to the city council, and was taken up and referred to the bridge and claims committee. They had several sessions at which I was present, and Mr. Stone and some of the bridge inspectors and the council committee. The first hearing was had back of the police chief's room. The other two committee meetings that I attended were in the committee room of the city hall. Mr. John Read was present at the first two meetings, and Mr. Myerly and Mr. Read at the third meeting. I don't know but there were four of these meetings. I was present at each one of them. The claim was filed with the board of public works about April 27, 1904, after it had been filed with the city council.

Another witness gave this testimony:

I presented the matter to Mr. Wise, and made an argument concerning the claim, giving him my opinion as to why the claim, or certain parts of it, ought to be allowed. I think Mr. Campbell was there, but my conversation was with Mr. Wise. Mr. Campbell was in the office a part of the time at least while I was there. I do not remember that I had any direct communication with Mr. Campbell. We had a number of papers with reference to the matter before us at the time. Mr. Wise had them there. . . . Mr. Wise told me that the matter was pending before the city council, and that he could not act upon the claim until the city council had passed upon it.

Notwithstanding this testimony, which does not, as we think, show a proper presentation of the claim to the board of public works, the testimony is conclusive that said board as a board never at any time considered plaintiff's claim for extras. We have already quoted some of the testimony as to what was done before the city council or the committee thereof, and need only add that another witness —an attorney at law—testified that he appeared before the city council and argued the matter. It also appears, however, that the committee of the council to which the claim for extra compensation was referred never made any report. This, then, is the testimony with reference to the filing of the claim with the board of public works and the conduct of plaintiff and the board with reference thereto. As said in the former opinion, the question as to whether or not the claim was filed with this board was one of fact for a jury; but we do not think there was any testimony tending to show a waiver by this board of the filing of the claim.

Moreover, it is conceded on all sides that the bridge was completed in the year 1903, so that at that time plaintiff's claim for extras accrued. It was not filed with the board of public works, if filed at all, until April of the year 1904. Between the time of the accrual of the claim and of each and every item thereof at least two estimates were made and warrants drawn thereon. We are constrained to hold under this record that plaintiff waived its claims for extras by not presenting them within the time provided by the contract, and that there was no waiver of such filing by any conduct or declarations on the part of the board of public works. The only other question to be considered then is, was there a waiver by the city council?

The only testimony upon which such waiver can be found we have already set out. No waiver could result from plaintiff's filing his claim with the city council or the board of public works after the time had expired

within which such filing should have been made. No

6. SAME: failure to file claim in time: waiver by municipality.

waiver can be found from the fact that the council referred the claim to a committee, and no waiver should be found from the fact that plaintiff appeared by himself and by counsel before this committee and the city council itself, unless it appears that they were invited to do so and to incur expense from the theory that, although the claims were not filed in time, this matter would be disregarded and the provisions of the contract with reference to time for filing waived. There is absolutely no testimony which we have been able to find showing or tending to show that either plaintiff or its counsel was invited to appear either before the committee or the council itself. Whatever was done in this respect was on plaintiff's own motion and without any intimation express or implied that the time for filing the claims would be waived. So far as shown, the committee to which the matter was referred never made any report, and there is nothing in the record showing for what reason the claims were rejected. Such being the record, no finding of waiver of the provisions of the contract either by the city council or the board of public works could have been sustained. This being true, the trial court was right in directing a verdict unless it be for one item, to wit, difference in cost of iron ribs due to a change made in the size thereof by order of the board of public works. The record does not show just when this claim arose. The change was ordered in July of the year 1902, but when the iron was in fact ordered or when it was placed in the bridge does not appear. It must, of course, have been used before July of the year 1903, when plaintiff claims the bridge was completed. Under such a showing, plaintiff is not entitled to have an exception made of this item. The first opinion settled practically every proposition of law in the case, and whether right or wrong the doctrines there announced must be followed on this

appeal. The testimony is practically the same save that on this trial defendant showed the intervening estimates made by the board of public works, which did not appear when the case was first before us, thus materially strengthening its position. The testimony as to waiver by defendant or its officials was no stronger on this trial than on the former one.

Our conclusion, after carefully considering the whole record, is that the judgment must be, and it is, *affirmed*.