KATE MORAN, Appellee, v. MARTIN MARTINSON, Appellant.

Assault and battery: EVIDENCE. In this action for damages for assault 1    and battery the evidence is held to present a case for the jury.

Same. A witness who visited plaintiff the day following an alleged 2    assault and battery was competent to testify that she said she was not feeling well; as there was nothing in the statement tending to give a reason for her condition, or to explain the alleged assault.

Same: SELF-DEFENSE: INSTRUCTION. When one has been assaulted 3    he may use such force in repelling the attack as then appears reasonably necessary to protect himself from imminent injury; the instruction in the instant case restricting defendant to the use of

necessary force, rather than such as appeared to be reasonably necessary, was erroneous.

**Same.** The right of self-defense arises when one has been assaulted; and when such defense is in the case the court should properly instruct thereon, even though no request was made, a failure to do which constitutes error.

**Same:** CONFLICTING INSTRUCTIONS. Where the court instructed that the burden was on plaintiff to show that she was assaulted when upon the public highway and in the peace of the state, the further instruction that the undisputed evidence showed that plaintiff was trespassing upon defendant's premises, and illegally carrying a revolver on the Sabbath, and which permitted recovery without proof of the facts required in the former instruction, was conflicting and erroneous.

*Appeal from Jones District Court.*—HON. MILO P. SMITH, Judge.

TUESDAY, APRIL 14, 1914.

ACTION for damages resulting from an assault and battery. From a verdict and judgment for plaintiff, the defendant appeals.—*Reversed.*

*C. J. Cash,* for appellant.

*J. J. Locher* and *J. S. Welch,* for appellee.

WITHROW, J.—I. The plaintiff is an unmarried woman between forty and fifty years of age, and, as appears from the evidence, of resolute purpose. In her petition she claims that on or about August 4, 1912, as she was passing peaceably along a public highway, driving her cattle to water, the defendant maliciously and wantonly assaulted her, first applying to her vile names and epithets, and then, without excuse or provocation, did strike her with a club, tore her clothes, and stole her revolver, resulting in loss of time, expenditures for medicine and attendance, and pain and suffering, for

which, together with the value of the revolver, she claims damages and right of recovery.

The defendant admitted in his answer that he took from plaintiff her loaded revolver when she was trespassing upon his farm; that he requested her to keep off of his farm, when she pointed the loaded revolver at him, and threatened to shoot him; and in taking the revolver from her, he acted in self-defense, and used no more force than was necessary to do so; and that he in no manner injured her, but retained the revolver, and brought it into court to be disposed of as might be directed.

From a verdict and judgment against him, the defendant appeals.

II. The trouble occurred on a Sunday afternoon. The appellee, as she testified, had been directed by her sister, also unmarried, and with whom she resided, to take the cattle to the river for water. In so doing she traveled part of the way over a public highway, until she reached the land of a Mr. Pierce.

1. Assault and battery: evidence.

She then opened a gate and drove the cattle down to the river, and in doing so was upon land at the time owned by the defendant, on which the cattle were permitted to graze. In this situation the appellant discovered the cattle and their driver, and there then followed a war of words between the parties in which there was employed language which markedly disturbed the peace of the Sabbath. It appears that the appellant had on previous times forbidden the appellee to drive or pasture her cattle upon his land; and it also is apparent from the record that this incursion provoked him to wrath, and her to an assertion of privilege that resulted in the trouble and alleged assault upon which this claim is based. She claims that he came towards her with hands clutched, using profane and abusive language; that he put his fist nearly into her eyes; that she had in one hand a revolver, and in the other a cane; that he grabbed the cane from her hand, and that she then started after her cattle, as they were

straying, when he drove the cane into her side and tore her dress; that the blow threw her into a ditch, and he wrested the revolver from her with such force as to tear her hand; that he struck her with his fist upon her attempt to get out of the ditch; that prior to that she had the revolver in her hands, and kept moving back telling him to keep away. She claims that her cattle did not go upon the Martinson land until after the trouble arose between the parties; but the evidence shows and the trial court instructed the jury that she at the time was trespassing upon the premises of the appellant. After the trouble the belligerent parties shook hands, as she says, at his request, and that she did so because she was in fear of him.

The appellant testified that for a period of several years the appellee and her sister had been trespassing upon his land, cutting his fences, and otherwise interfering with his possession, and that he had often forbidden them to do so. On this Sunday he says that when he saw her he said, "Kate, what does this mean," and she told him to go on about his business; that she tried to strike him with the stick or cane, and he knocked it from her hand, and she then produced her revolver and said, "I'll show you," and that he told her to put it away, as it was dangerous. A few words followed, when, as he claims, she pointed the revolver at him and said, "I'll kill you," whereupon he threw her right hand up, which unbalanced her, and she fell into the ditch; that she changed the revolver to her left hand, when he grabbed it and took it; that, after he had possession of the gun, Kate changed her methods, and asked why they could not be friends; that they talked over their differences, and then shook hands, and were apparently as good friends as ever. There is much more of detail but the foregoing, in substance, states the evidence so far as is necessary to determine the questions raised by this appeal.

III. The assignments of error are that the verdict is contrary to the evidence, is contrary to law, and is contrary to

the instructions, that there was error in permitting a witness to testify to declarations of the appellant the day after the injury, and in giving certain instructions. What we have quoted of the evidence is sufficient to show that the case, upon its facts, was one for the jury, and we therefore need give no further attention to that assignment of error.

IV. A witness visited the Moran home the day after the trouble. He was permitted to testify on cross-examination that she said she was not feeling well; but there was nothing in what she said which tended to give a reason for her condition, or in any manner to explain or recite the occurrence of the previous day. The evidence was not incompetent; was not offered, nor could not be construed as being a part of the *res gestæ*, but a mere declaration as to her feelings and condition, which was not improper.

2. SAME.

V. The third instruction given to the jury was to the effect that the undisputed testimony showed that plaintiff was a trespasser upon the premises of the defendant, and that, in carrying a loaded revolver on the Sabbath or first day of the week, she was violating the law; that defendant was justified in ordering her to quit his premises, and in distraining her cattle till his damages were paid; and, if she pointed the revolver at him, he was justified, under the law or in self-defense, in disarming her; that he had, in attempting to eject the plaintiff from his premises, or in disarming her, the right to use sufficient force necessary to accomplish that purpose, and, upon her resistance, he might oppose force to force, as a reasonably prudent man in his situation would do; but he would not be justified in striking her or beating her, or in using any more force than was required to wrest the weapon from her.

3. SAME: self-defense: instruction.

Instruction No. 4 was based upon the same rule stated in instruction No. 3 as to the facts which would entitle plaintiff to recover, and was, in effect, that the use of excessive force would make the defendant liable. These instructions are criticised for the reason that they limited the defendant to nec-

essary force, and not such force as to him then seemed reasonably necessary; and also that he was limited to the right to use such force only in disarming the appellee. We think the criticism is just. While the instructions in the main were based upon the right of the appellant to disarm Miss Moran as a trespasser carrying a loaded revolver, the third instruction expressly mentioned his right of. self-defense, and all that followed applied alike to either condition. The right of self-defense and that he so acted were raised by the answer of the appellant, and there was proof tending to sustain it.

That right arises when one has been assaulted; and he is permitted to use such force and no more as to him then appeared reasonably necessary to protect himself from imminent injury. *State v. Jones,* 89 Iowa, 186; *State v. Weston,* 98 Iowa, 130; *State v. Smith,* 100 Iowa, 1.

4. SAME.

Nowhere in the instructions does this thought appear, nor is there any more than casual mention of the claim that the act was committed in self-defense. Having recognized it as being in the case, the trial court should have instructed upon it, even though no request for such instruction was made, and a failure to do so was error. *Overhauser v. Am. Cereal Co.,* 128 Iowa, 580; *Hall v. Manson,* 90 Iowa, 585; *Capital City Brick Co. v. Des Moines,* 136 Iowa, 243.

VI. Instruction No. 2, evidently adopting the statements of the petition, stated that the burden of proof was upon the plaintiff to show that, at the time she claims to have been assaulted, she was "on the public road or highway and in the peace of the state," and that she was assaulted and damaged. Instruction No. 3 told the jury "that the undisputed testimony shows that, at the time the defendant assaulted her, she was trespassing upon his premises, and that, in carrying a loaded revolver on the Sabbath, she was violating the law." It is difficult to reconcile a right of recovery with the requirements stated in instruction No. 2, as instruction No. 3 in express terms stated

5. SAME: conflicting instructions.

to the jury conclusions of fact in direct contradiction of that what was required to be shown under the rule of the previous instruction.  If instruction No. 2 was correct, then, under the facts stated by the trial court to be undisputed the verdict was contrary to it, and there was error in giving instructions Nos. 3 and 4, as recovery was by them permitted without the proof of facts required by No. 2.

That contradictory instructions is reversible error, see *Beaver v. Porter,* 129 Iowa, 41; *Loomis v. Des Moines News Co.,* 110 Iowa, 515; *Vanslyck v. Mills,* 34 Iowa, 375.

For the errors pointed out the judgment of the lower court is—*Reversed.*

LADD, C. J., and DEEMER and GAYNOR, JJ., concur.