MINNIE HALL v. THE INCORPORATED TOWN OF MANSON, IOWA, Appellant.

**Personal Injury: Damages.**   An instruction which allows damages for mental suffering which includes peril, and also for peril as a distinct element, is erroneous.   (6)

SAME.   Peril preceding injury, of which peril plaintiff is at the time ignorant, is an improper element of damages.   (6)

**Same: Earnings of Wife.**   A wife can not recover for a lessening of her capacity to perform the duties of a housewife.   (7)

Instruction: Degree of Care. Instructions construed, and held, with others, to charge properly, that the duty of a town was to make its crossings reasonably safe for travelers. (3)

SAME. Instruction construed, and held to charge properly, that plaintiff's duty was to use ordinary care at all times, but that there might be a difference in what amounted to ordinary care in daytime and what in nighttime. (4)

Error Without Prejudice: Instructions. An instruction may assume the existence of undisputed facts. (4)

SAME: FAILURE TO INSTRUCT: PRACTICE ON APPEAL. The objection that there was an omission to charge on an essential point, can not be raised for the first time in this court. (5)

*Appeal from Calhoun District Court.*—HON. GEORGE W. PAINE, Judge.

SATURDAY, MAY 12, 1894.

ACTION for damages resulting from personal injuries. Trial to jury. Verdict for plaintiff. Defendant appeals.—*Reversed.*

*E. A. Walton* and *Stevenson & Lavender* for appellant.

*Botsford, Healy & Healy* for appellee.

KINNE, J.—I.  In 1891 the defendant town, for the purpose of laying its mains for water, had excavated a ditch about six feet deep on and along Second street, and near the north side thereof, which excavation extended across Main street in said town.  There was a crossing on the west side of Main street extending over said Second street, and said excavation came up to the sides of said crossing near the north side of Second street.  This sidewalk crossing was three feet wide. The excavation spoken of had existed for some weeks prior to the occurrence of the injury in question.  A water pipe had been laid in the bottom of the ditch, but the ditch had not been filled, prior to the accident. On the evening of October 20, 1891, plaintiff and

another lady undertook to pass over said Second street on the crossing before mentioned, and in doing so, plaintiff fell into the excavation, and suffered the injury for which she now seeks to recover.    It is claimed on part of plaintiff that in attempting to cross the street she was in the exercise of due care, and that the night was dark; that there was no light or signal to warn her of the excavation, nor any barriers to prevent her from falling into it; that she was unable to discover the limits of the crossing by reason of the darkness; that she had no knowledge of the existence of the excavation, and that the defendant was negligent in not erecting barriers to prevent pedestrians from falling into the excavation, and in failing to place a light or signal thereat. The defendant admitted its incorporation, and that plaintiff's claim had not been paid, and denied all the other allegations of the petition.    There was a verdict for three thousand dollars for plaintiff.

II.    Very many errors are assigned and argued, some of them arising upon the admission and rejection of evidence.    As, for errors in the giving of instructions, the case must be reversed, we need not consider the errors above referred to; for on another trial the same questions are not likely to arise.    Nor, in view of our disposition of the case, would it be proper for us to pass upon the sufficiency of the evidence to support the finding of the jury, as it may be materially different on another trial.

III.    It is urged that the court erred in giving the second instruction.    In this instruction the jury is told that defendant is bound to keep its streets, sidewalks and crossings in a *safe* condition for public travel.    In the third, fourth, and seventh instructions the jury was properly told, in substance, that it was the defendant's duty to use ordinary care and skill to make its streets and crossings reasonably safe for the use of travelers; and in the third instruction it was

told that defendant was not obliged to keep the crossing absolutely safe. Considering all of these charges together, we do not think it can be justly claimed that the jury was misled to the defendant's prejudice. We think it may fairly be presumed from the entire charge that the jury would understand that the duty of defendant went only to the extent of using ordinary care in keeping its crossings in a reasonably safe condition for the use of travelers.

IV. Complaint is made of the sixth instruction given by the court. It is as follows: "The plaintiff was on her part held to the exercise of ordinary care, but she was not bound to a greater degree of care in the nighttime than in the daytime. And in determining this question you are to take into consideration the place where it happened, the time of night, the construction and width of the crossing, and the declarations of the plaintiff at or immediately after the injury happened, in reference thereto, if you find she made any such declarations, and all the other circumstances in evidence surrounding the transaction. The same degree of care is to be used at all times, but greater caution or watchfulness should be exercised at night than in the daytime." This instruction is criticised by counsel, *first*, as assuming that plaintiff had in fact received the injury; *second*, because it directed the jury to consider, as bearing on the question of negligence, the construction and width of the crossing; *third*, because it was uncertain, misleading, and inconsistent. It is true that by the pleadings the fact of injury was denied by defendant, and hence may be said to be a question for determination by the jury, under the evidence.

We fail, however, to find any conflict whatever in the evidence touching the fact that plaintiff was in fact injured by falling into the excavation. There is nothing to show that the injury was received at any other time, or in any other manner. If it be conceded that

the instruction is open to the charge that it assumes that the accident occurred by reason of plaintiff's falling into the ditch, still it could work no prejudice to defendant, as all of the evidence shows that such was the fact. Under such circumstances it is not error for the court in an instruction to assume the existence of a fact about which there is no conflict in the evidence, and which fact is fully established by the evidence. *Russ v. The War Eagle*, 14 Iowa, 363; *Hughes v. Monty*, 24 Iowa, 499; *State v. Meshek*, 61 Iowa, 316, 16 N. W. Rep. 143; *Wood v. Porter*, 56 Iowa, 161, 9 N. W. Rep. 113. We see no error in that part of the charge which directs the jury to take into consideration all the circumstances surrounding the accident, including the construction and width of the crossing, in determining as to whether or not plaintiff was in the exercise of ordinary care. In any event, no prejudice could have resulted to defendant from this direction of the court. Nor do we think that the claim that the instruction was misleading, uncertain, and inconsistent is well founded. It may be conceded that the thought which the court undertook to express as to the degree of care required of the plaintiff was not happily stated, and not as clearly as it might have been. By the instruction the jury was told, in substance, that the same degree of care was to be used at all times, but that greater caution or watchfulness might be required at night than in the daytime. This rule is held in *Stier v. City of Oskaloosa*, 41 Iowa, 357. Now, the degree of care in such a case is ordinary care, whether the accident occurs in the daytime or nighttime. What will constitute ordinary care, however, will depend upon circumstances, and these may well include a consideration of the fact as to whether the accident occurred in the daytime or nighttime; and, if at night, it might be that more caution and watchfulness would be required to be shown

in order to establish the fact that the plaintiff was, in fact, at the time of the injury, in the exercise of ordinary care.    In either case the degree is the same,—ordinary care—but the facts establishing such a degree of care may de different.    As we have indicated, the instruction is not happily worded, but still we do not think it is justly open to the criticism made.

V. It is said that the court, in its charge, fails to instruct the jury touching the matter of notice to the defendant, of the excavation.    It is true that the jury was not advised by the instructions as to the fact that the defendant, in order to be held liable, must have had actual notice of the defect, and an opportunity thereafter to remedy it prior to the accident complained of, or that it must have existed for such a length of time prior to the accident and have been so obvious, as that it may be presumed that the defendant had knowledge of it, and an opportunity to remedy it. The jury should have been fully instructed as to all the elements essential to plaintiff's recovery, and this would include this matter of notice. No instruction was asked by the defendant upon this branch of the case.    While it is a general rule that a case will not be reversed for a failure to instruct on some point upon which an instruction would have been proper, and while in such cases it is usually incumbent on the complaining party to ask an instruction, yet such is not the invariable rule, especially in cases wherein the omitted instruction is essential to a full and proper submission of the case and necessary for the proper guidance of the jury. But we are not called upon to decide whether the failure to thus instruct on the question of notice was reversible error in this case, as we do not find that this question was presented to the court below.    For aught that appears, it is made for the first time in this court, and under such circumstances, we can not pass upon it.

VI. In the eleventh instruction the jury was told that, if they found for plaintiff, in assessing her damages, they might take into consideration, among other things, what would compensate her "for the peril, if any, that the jury may find that she was subjected to, from the evidence in this case." It is insisted that in this respect the instruction was erroneous. "Peril," is defined by Webster as "instant or impending·danger; risk; hazard; jeopardy; exposure to injury, loss, or destruction." Another definition is, "To expose to danger; to hazard; to risk; to jeopard." And still another is, "To be in danger." Without determining whether damages can be recovered for the peril one is in after he is conscious that an injury is impending and unavoidable, and prior to the actual infliction of the injury, we conclude that for other reasons the instruction, as given, was erroneous. It is somewhat lengthy, and we can not set it out in full, but the phraseology of it is such that it may fairly be said to be open to the construction that the peril spoken of might be such as would ensue as a result of the injury. The instruction is not limited to the peril incident to the time the plaintiff was falling into the excavation, and when she knew, or might perhaps be put in fear, of physical injury as a result of the fall. If the peril spoken of related to a time anterior to her fall, it certainly was not a proper element of damages, for, as she testifies, she did not know of the existence of the excavation prior to stepping into it. It follows she could not, prior to that time, have been conscious of danger. In one sense any one might be said to be in peril,—that is, subjected to possible danger and risk, who chanced to cross the street where this excavation was, even though he did not fall into it. But damages are not to be allowed for a risk to one who is not conscious of the impending danger, and when no physical injury is sustained. *Railway Co. v. McGinnis*, 26

Pac. Rep. (Kan.) 453. It is said that no prejudice could result, because peril is included in mental pain and suffering, for which the court properly told the jury plaintiff might recover. It is a sufficient answer to this that the instruction was not so worded as to imply that the peril referred to was included in mental pain and suffering. The jury was, by the instruction, given to understand that peril was a distinct, independent, and additional element of damages, for which recovery could be had; an element in addition to all the other elements of damage set forth in the instruction. In our view of the instruction, its wording would warrant the jury in allowing damages for mental pain and suffering, which would include peril, and also for peril as a distinct, independent, and additional element of damage, thereby allowing double compensation for the peril that plaintiff was in, which would be erroneous. See *Railway Co. v. Brunker*, 26 N. E. Rep. (Ind. Sup.) 178.

VII. In the eleventh instruction the court also told the jury: "And in assessing the plaintiff's damages, if a permanent injury has been proven from the evidence, the jury may take into consideration the permanent loss and damage, if any is proved, arising from any disability resulting to the plaintiff from the injury in question, which renders the plaintiff less capable of attending to her ordinary duties than she would have been if the injury had not been received." The same thought is expressed in the twelfth and thirteenth instructions in somewhat different language. The evidence is that plaintiff is a married woman; that as such her duties are that of a wife keeping house for her husband. Being such, and not engaged in business on her own account, recovery for loss of her services could be had only by the husband. It is said in *Van Doran v. Marden*, 48 Iowa, 188: "We know of no legislation which changes the relations of husband

and wife so as to give the headship of the family in any case to the wife. He is still bound for her support, and entitled to her earnings, when she is not engaged in business on her own account." In *Tuttle v. Railway Co.*, 42 Iowa, 521, the court said: "The plaintiff in the case before us was engaged in no other than domestic services as the maternal head of the husband's family. Whatever time she lost or would lose would have been devoted to his employment, and the loss was her husband's for which she had no right to recover. If we admit her right to recover, defendant would be twice liable, for assuredly, under the rules of law, the husband may recover for such losses as were sustained by her." In *Fleming v. Town of Shenandoah*, 67 Iowa, 508, 25 N. W. Rep. 752, it is said: "She can not recover for loss of time occasioned by an injury, if her occupation is that of a mere housewife in the family of her husband." See, also, *Mewhirter v. Hatten*, 42 Iowa, 288; *Grant v. Green*, 41 Iowa, 88; *Lyle v. Gray*, 47 Iowa, 153; *Nichols v. Railway Co.*, 68 Iowa, 736, 28 N. W. Rep. 44. Under the rule as laid down in the above cases it is clear that plaintiff could not recover damages by reason of having by the injury been rendered less capable of attending to her ordinary duties as a housewife. As for loss of her services, the husband alone could recover, so for a partial loss of such services, resulting from her impaired ability by reason of the injury, he only can recover. For the reasons given, the case must be REVERSED.