Herman W. DeWALL, Appellee,

v.

Glenn Melvern PRENTICE and Kenneth
Dean Scheller, Appellants.

No. 56126.

Supreme Court of Iowa.

Dec. 18, 1974.

July 14, 1969, a tractor operated by plaintiff DeWall was struck from the rear by a truck owned and driven by defendants Prentice and Scheller, respectively. DeWall was seriously injured.

July 9, 1971, plaintiff caused to be filed a damage-seeking action against both defendants. The same day attendant original notices were delivered to the Pocahontas County Sheriff with instructions they be served on defendants in Rodman, Iowa. The process-armed deputy sheriff thereupon contacted a banker in West Bend, a community located near Rodman. He thus learned Prentice lived in New London, Minnesota and Scheller resided in Chewelah, Washington. By letter bearing date July 16, 1971, the sheriff so advised DeWall's present counsel.

July 26, 1971, plaintiff's attorney delivered to the Iowa Commissioner of Public Safety original notices directed to both nonresident defendants.

July 30, 1971, a notice of such filing was duly forwarded by plaintiff's counsel to each defendant at his last above stated residence.

Thereafter trial court overruled defendants' statute of limitations based motion to dismiss plaintiff's action, and as previously disclosed the case proceeded to trial.

Other relevant facts will be later set forth as they relate to these issues asserted in support of a reversal: (1) Holding the defense-asserted statute of limitations was barred by the plaintiff-invoked equitable estoppel doctrine; (2) submitting jury instructions under which plaintiff could be allowed recovery for loss of income, loss of earning capacity, and loss of support to his children and spouse; (3) instructing the jury regarding loss of plaintiff's income and earning capacity absent adequate evidential support. These assignments will be considered in the order presented.

I. It is facially apparent no legal action was effectively commenced by plaintiff against defendants within the limitation pe-

---

Whitfield, Musgrave, Selvy, Kelly & Eddy by Timothy J. Walker and David L. Phipps, Des Moines, for appellants.

McCullough Law Firm, Sac City, for appellee.

RAWLINGS, Justice.

Plaintiff's action for damages arising out of a tractor-truck collision resulted in judgment on jury verdict adverse to defendants and they appeal. We affirm in part, reverse in part.

riod specified in The Code 1971, Section 614.1, which provides in relevant part:

"Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specifically declared:

"1. * * *

"2. Injuries to person or reputation—relative rights—statute penalty. Those founded on injuries to the person * * within two years."

In addition to the aforesaid motion to dismiss, defendants later asserted by answer, as an affirmative defense, the above quoted limitation statute.

■ July 9, 1971, plaintiff caused a petition to be filed in Pocahontas District Court. Original notices were promptly given the sheriff for service on defendants. But since neither Prentice nor Scheller then resided in that jurisdiction the notices were not delivered to "the sheriff of the proper county." See Iowa R.Civ.P. 48–49; Fulmer v. Debel, 216 N.W.2d 789, 791–792 (Iowa 1974) and citations. See also Code § 616.18. Thus, no action was actually commenced by the aforesaid July 9 proceedings.

Additionally the above noted nonresident motorist notices were filed with the Public Safety Commission July 26, 1971, and mailed to defendants July 30, 1971, all of which was beyond the Code § 614.1(2) limitation period. See also Code § 321.501.

II. So the problem posed is whether plaintiff made such showing of circumstances constituting equitable estoppel as to bar application of the limitation act quoted above.

■ At the outset it is conceded equitable estoppel may, under proper circumstances, preclude a limitation of action defense. Demonstrably we said in L & W Construction Co., Inc. v. Kinser, 251 Iowa 56, 66–67, 99 N.W.2d 276 (1959):

"The doctrine of equitable estoppel is applicable to statutes of limitations. Hol-man v. Omaha & C. B. Ry. & Bridge Co., 117 Iowa 268, 90 N.W. 833, 62 L.R.A. 395 [94 Am.St.Rep. 293]; In re Estate of Carpenter, 210 Iowa 553, 231 N.W. 376; Swift v. Petersen, 240 Iowa 715, 37 N.W.2d 258.

" 'A statute cannot stand in the way of waiver or equitable estoppel when the facts demand their application in the interest of justice and right.' Kallock v. Elward, 118 Maine 346 [348], 108 A. 256, 258, 8 A.L.R. 750 [752].

" 'A defendant may be estopped by his agreement, representations, or conduct from asserting the bar of the statute of limitations. * * * However, before the doctrine of estoppel to plead limitations may be successfully invoked on the basis of fraud, it is essential to show existence of the essential elements of such an estoppel, * * * and in this connection it has been held that plaintiff is under a duty to exercise reasonable care and diligence.' 53 C.J.S. Limitations of Actions § 25 [pages 962, 965]."

See also 51 Am.Jur.2d, Limitation of Actions, § 431.

This court also stated, in Walters v. Walters, 203 N.W.2d 376, 379 (Iowa 1973):

"The essential elements of equitable estoppel or estoppel in pais are:

"(1) a false representation or concealment of material facts; (2) lack of knowledge of true facts on part of actor; (3) intention that it be acted upon; and (4) reliance thereon by the party to whom made, to his prejudice and injury."

And in Holden v. Construction Machinery Company, 202 N.W.2d 348, 355–356 (Iowa 1972) is this statement:

"The elements of equitable estoppel are well established. There must be conduct amounting to false representation or concealment, and a party relying thereon must be thereby misled into doing or failing to do something he would not otherwise have done or omitted. A party asserting this defense has the burden to

establish all essential elements thereof by clear, convincing and satisfactory proof. Nothing less will suffice. See Holsteen v. Thompson, 169 N.W.2d 554, 558–559 (Iowa 1969); Janssen v. North Iowa Conf. Pen., Inc. of Methodist Church, 166 N.W.2d 901, 906–907 (Iowa 1969); McClintock on Equity, § 31 at 79–80 (2d ed. 1948); 28 Am.Jur.2d, Estoppel and Waiver, §§ 26–29, 33–44; 31 C.J.S. Estoppel §§ 59, 67–77.

"Also, despite defendants' claim to the contrary, one must knowingly take a position with intention it be acted upon, and that there be reliance thereon by another to his prejudice. See Ames Trust and Savings Bank v. Reichardt, 254 Iowa 1272, 1280, 121 N.W.2d 200 (1963); 28 Am.Jur.2d, Estoppel and Waiver, § 78; 30A C.J.S. Equity §§ 118, 128."

See also Mizer v. State Automobile & Casualty Underwriters, 195 N.W.2d 367, 371 (Iowa 1972).

Then in Shellhorn v. Williams, 244 Iowa 908, 918–919, 58 N.W.2d 361 (1953), we approvingly quoted this from Lingar v. Harlan Fuel Co., 298 Ky. 216, 182 S.W.2d 657, 659:

> " '[O]ne may not omit to avail himself of readily accessible sources of information concerning particular facts, and thereafter plead as an estoppel the silence of another who has been guilty of no act calculated to induce the party claiming ignorance to refrain from investigating.' "

To like effect is this comment in Johnston v. State Bank, 195 N.W.2d 126, 130 (Iowa 1972):

> "A person whose own conduct or default got him into his predicament cannot successfully urge estoppel. 28 Am.Jur.2d, Estoppel & Waiver, § 79 at 719; 31 C.J.S. Estoppel § 75 at 452–455."

Significantly, the doctrine of equitable estoppel is designed to prevent fraud and injustice and may come into play whenever a party cannot in good conscience gainsay his prior acts or assertions. See Dart v. Thompson, 261 Iowa 237, 243–244, 154 N.W.2d 82 (1967). See also McClintock on Equity, § 31 at 79–80 (2d ed. 1948).

III. Mindful of the foregoing we look again to the record.

At time of the July 14, 1969 accident the name Glenn Melvern Prentice, followed by Rodman, Iowa, was printed on the involved truck. That afternoon Prentice visited with plaintiff in his home. At the same time an agent for Prentice's insurance carrier left a slip of paper with plaintiff on which had been written, in material part: "Glenn M. Prentice, Rodman, Iowa, Policy No. 11 = 415448."

Subsequently, on several occasions, an adjuster for said insurer called on plaintiff and unsuccessfully discussed the matter of settlement.

Moreover, Prentice unquestionably registered the accident-involved truck in Palto Alto County, with Rodman, Iowa, then being his declared bona fide residence and mail address. See Code § 321.20(1).

Sometime in the fall of 1969 plaintiff contacted Ralph Bastian, a Fort Dodge attorney. DeWall then delivered to Mr. Bastian two accident report forms showing Glenn Melvern Prentice, Rodman, Iowa, was the truck owner and Kenneth Dean Scheller the operator thereof at time of the accident. See Code §§ 321.266–321.271. As best we can determine these forms were neither prepared nor signed by Prentice. One was filed by State Trooper Arlon Meyer; the other having been executed by Scheller giving Rodman, Iowa as his and Prentice's address. Attorney Bastian did nothing regarding the instant case until June 22, 1971, when he again conferred with DeWall. Mr. Bastian then discovered he had previously represented Prentice's insurance carrier. Plaintiff was resultantly told by Bastian he could not take the case but would endeavor to effect a settlement with Prentice's insurer. In event, however, that goal was not achieved DeWall would

have to engage other counsel. Bastian's efforts proved to be futile and about July 2, 1971, he contacted attorney Thomas McCullough.

In May or June of 1971, Claire Carlson, a lawyer associated with Bastian, was asked by the latter to prepare a workup on the DeWall file for possible use in event the case should be later referred to other counsel. Mrs. Carlson, in complying with that request, relied somewhat on the accident report forms. On inquiry she was also advised to the effect records in the Palo Alto County Courthouse disclosed some trucks were registered to Prentice in 1971, with Rodman, Iowa again given as the registrant's address.

The DeWall file was delivered to the McCullough law firm in Sac City about a week or ten days before expiration of the two year statutory limitation period.

John Phillips, a Palo Alto Deputy County Treasurer, testified Prentice made application for registration of the accident-involved truck in April 1969 and, as aforesaid, the designated address was Rodman, Iowa. In 1971 several other vehicles were likewise registered. Mr. Phillips further stated the Palo Alto Treasurer's office had never been advised by Prentice he was not a resident of that county.

Prentice, by affidavit, declared he moved from Rodman to Heron Lake in 1962 and later to New London; the latter two communities being in Minnesota. He holds contract carrier permits issued by the Iowa State Commerce Commission which allow him to haul gravel in this state. Prentice also annually renews truck registrations and pays license fees in Palo Alto County on a pro-rata basis.

As above noted Prentice never advised the Iowa Public Safety Department, the Palo Alto County Treasurer, or plaintiff to the effect his Rodman, Iowa address, as disclosed by the aforesaid accident report and motor vehicle registrations, was incorrect. Furthermore, we have held that in mailing the notice of filing required by

Code § 321.501 a plaintiff may rely on the address given by a nonresident to public authorities, at least until advised otherwise by the nonresident or his representative. See Wolfs v. Challacombe, 218 N.W.2d 564, 569 (Iowa ·1974). Under existing circumstances we are satisfied our holding in *Wolfs, supra,* is here applicable as to Prentice.

Moreover, before attempting to effect in-state service of original notice, plaintiff made timely inquiry as to Prentice's place of residence and reasonably relied on his Iowa vehicle registration misrepresentations.

In light of the foregoing it is to us evident plaintiff was lulled into a false sense of security regarding the ready accessibility of Prentice as to in-state process attendant upon legal action against him. See Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 232–235, 79 S.Ct. 760, 762–763, 3 L.Ed.2d 770 (1959); Sioux City v. Johnson, 165 N.W.2d 762, 767 (Iowa 1969); Sanborn v. Maryland Casualty Co., 255 Iowa 1319, 1327, 125 N.W.2d 758 (1964); 28 Am.Jur.2d, Estoppel and Waiver, §§ 26–28; 31 C.J.S. Estoppel §§ 107–108.

Reasonably relying upon all of the aforesaid address misrepresentations plaintiff did make a timely, but unsuccessful, effort to effect appropriate in-state service of original notice on Prentice.

Later, when untimely nonresident motorist notice was given, this defendant invoked the statute of limitations. That was nothing less than an atttempt to benefit by his own prior misrepresentations.

Briefly stated, equity will not permit the statute of limitations to be effectively employed under existing circumstances. See McCampbell v. Southard, 62 Ohio App. 339, 23 N.E.2d 954 (1937); Annot., 43 A.L.R.3d 429 at 467–471.

It therefore follows trial court correctly overruled Prentice's statute of limitations based motion to dismiss.

IV. But the situation is distinguishable as to Scheller. The accident report executed by this defendant designated Rodman, Iowa as his then true place of residence. And, absent anything in the record to the contrary, we can only assume the address thus designated was correct. Stated otherwise, there is nothing before this court upon which to find that Scheller, at any time, misrepresented his true place of residence or address.

Furthermore, no showing is made by which we can determine when Scheller moved to Chewelah, Washington.

Additionally, no effort was made by plaintiff, or anyone on his behalf, over a period of almost two years to determine Scheller's existent place of residence.

At this point Iowa R.Civ.P. 56, regarding personal service of notice, comes into play. Unlike Code § 321.501 it does not permit the mailing of notice to a defendant's last known address. Therefore our holding in Wolfs v. Challacombe, *supra*, is inapposite as to Scheller. More appropriately see Fulmer v. Debel, 216 N.W.2d 789 (Iowa 1974). See also Matney v. Currier, 203 N.W.2d 589 (Iowa 1973).

We are satisfied plaintiff's failure to timely avail himself of readily accessible information regarding Scheller's residence, prior to the attempted in-state service of notice upon him, precludes application of the equitable estoppel doctrine as to the statute of limitations invoked by this defendant.

More specifically, plaintiff failed to establish equitable estoppel as a bar to Scheller's asserted limitation of action defense by clear, convincing and satisfactory proof.

Therefore trial court erred in overruling Scheller's motion to dismiss. As to him this necessitates a reversal.

Consequently we shall confine the remainder of our review to errors urged by Prentice as sole defendant.

V. The question next posed is whether instructions given were such as to permit a jury award of double damages to plaintiff.

In summary Prentice here argues (1) instruction 12 allowed recovery of damages by plaintiff for lost earnings; (2) instruction 13 permitted an additional award for loss of services *and support* as a parent and spouse; (3) by instruction 14 the jury was told to add all such amounts in reaching a verdict; (4) the sum by which plaintiff's earnings were reduced would be the same amount by which *support* to his wife and children would be diminished; and (5) absent an appropriate instruction telling the jury loss of *parental and interspousal support* could not be added to loss of earnings the jury was permitted to award double damages.

Plaintiff inceptionally urges error, if any, regarding duplicate damages was not adequately voiced in trial court. We do not agree. The record reveals defendant there asserted:

"Instruction No. 13 would allow the Plaintiff to recover double sums and that he has already under other instructions been allowed to recover loss of earnings. Impairment to his earning capacity and all other items of damage to which he and his entire family are properly entitled to recover."

Pursuing the subject at hand further, plaintiff takes the position an existent statutory enactment clearly permits a recovery such as provided by Instruction 13, noted above.

He supportively cites Code § 613.15 which states:

"In any action for damages because of the wrongful or negligent injury or death of a woman, there shall be no disabilities or restrictions, and recovery may be had on account thereof in the same manner as in cases of damage because of the wrongful or negligent injury or death of a man. In addition she, or her administrator for her estate, may recover for physician's services, nursing and hospital expense,

and in the case of both women and men, such person, or the appropriate administrator, may recover the value of services and support as spouse or parent or both, as the case may be, in such sum as the jury deems proper; provided, however, recovery for these elements of damage may not be had by the spouse and children, as such, of any person who, or whose administrator, is entitled to recover same."

■ We are persuaded the instructions given as aforesaid, without a related instruction precluding an allowance for both lost earnings *and* loss of support as a parent or spouse, to the extent such lost earnings would be the source of any loss of support, enabled the jury to award plaintiff duplicate damages.

As this court said in Adams v. Deur, 173 N.W.2d 100, 105 (Iowa 1969):

"[T]he principle underlying allowance of damages is that of compensation, the ultimate purpose being to place the injured party in as favorable a position as though no wrong had been committed.

"On the other hand no rule of law should permit an injured party * * * to receive more than has been lost as the result of some tortious act."

See also Hall v. Town of Manson, 90 Iowa 585, 591–592, 58 N.W. 881 (1894); 22 Am. Jur.2d, Damages, §§ 12–13; 25 C.J.S. Damages § 3.

The situation is otherwise regarding tortious death damages. There the representative of an estate may recover, in addition to the value of decedent's services and support as a spouse or parent, only the net amount which would have come to decedent had he or she lived. Thus no double damages problem is presented. See Adams v. Deur, 173 N.W.2d at 107–108. See also Hankins v. Derby, 211 N.W.2d 581 (Iowa 1973); Wardlow v. City of Keokuk, 190 N.W.2d 439 (Iowa 1971); 15 Drake L.Rev. 107, 109 (1966). See generally Egan v. Naylor, 208 N.W.2d 915 (Iowa 1973).

Finally, it is to us evident Code § 613.15, quoted above, must mean that in addition to recovery ordinarily allowed men and women alike for a tortious wrong, redress may be had, where appropriate, for other specified elements of damage; not that duplicating damages may be recovered. Cf. Glanville v. Chicago, R. I. & P. R. Co., 196 Iowa 456, 464, 193 N.W. 548 (1923).

Since plaintiff DeWall was instructionally permitted recovery for loss of earnings, the jury was impermissibly allowed to award him additional compensation for loss of support to his wife and children to the extent such support would be provided from recoverable lost earnings.

This case must therefore be reversed and remanded for a new trial upon plaintiff's action against defendant Prentice.

By virtue of that holding other issues presented which may again arise on retrial will be entertained.

■ VI. Another error here urged focuses upon adequacy of evidence to support the giving of instructions 12 and 14 regarding plaintiff's alleged loss of (1) earning capacity and (2) time and earnings.

We shall first consider the matter of alleged loss of earning capacity.

No useful purpose will be served by here attempting to detail all evidence touching on the instant issue.

Prior to the accident DeWall was in good health, operated a 240 acre farm on which 150–200 hogs were farrowed each year, milked about 30 cows, and fed approximately 100 head of cattle for marketing. He had installed a storage unit preparatory to an intended expansion of his dairy operations. DeWall did most of the work attendant upon the foregoing functions.

At trial time plaintiff was 40, married and had four children. His life expectancy was 32.18 years.

As a result of the July 14, 1969 accident plaintiff sustained permanent back injuries. It was thereafter difficult and at times

impossible for him to do the farm work. Resultantly, members of the DeWall family and neighbors were called upon to perform much of the manual labor.

Medical testimony discloses plaintiff's work-related difficulties stemmed from the accident here involved. A fusion of the lumbrosacral joint may also be eventually required with resultant total disability for at least one year. In any event, plaintiff's condition will worsen with the passage of time.

The record also reveals DeWall's income dropped from $8000 in 1969 to $2568 in 1971, largely due to forced changes in dairy and hog production, all by reason of the accident.

At this point these pronouncements in Anthes v. Anthes, 258 Iowa 260, 269–270, 139 N.W.2d 201, 207 (1965) are apropos:

"In Grant v. Thomas, 254 Iowa 581, 585, 118 N.W.2d 545, we held loss of earning capacity is an element of permanent injury. We also there held it is for the jury to determine the sum necessary to compensate plaintiff, if at all, by awarding the present value of future earning capacity to the extent it was impaired, according to the testimony. Then in Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 722, 107 N.W.2d 85, 94, we said: 'We have held impairment of physical capacity in itself may be presumed to impair the general earning capacity of the person injured.'

"There is no fixed rule for the determination of damages for impairment of future earning ability. It cannot be fixed within any prescribed field of certainty and must, of necessity, be left to the sound discretion of the jury. 22 Am. Jur.2d, Damages, section 93, page 136.

"The right to damages for impairment of earning capacity may otherwise be classified as impairment of ability to work and earn. It is determinable by the difference between the value of an individual's services, if working, as he would have been but for the injury, and the value of the services of an injured person, if working, in the future. 22 Am.Jur.2d, Damages, section 92, page 134. It is based upon capacity to earn, not on earnings alone.

"A person may not have worked or may have had no income prior to trial, but still suffer impairment of future earning capacity. Shover v. Iowa Lutheran Hospital, supra, and 22 Am.Jur.2d, Damages, section 100, page 147.

"Impairment of physical capacity creates an inference of lessened earning ability in the future. Medical testimony is, of course, admissible in support of this element of damage but not always essential. The basic element to be determined in the matter of claimed impairment of future earning capacity is the reduction in value of the power to earn, not the difference in earnings received before and after the injury. 22 Am.Jur.2d, Damages, section 94, page 136.

"In considering impairment of earning capacity we are dealing with after injury decreased earning potentiality. This must be determined not alone by earnings before and after, nor by expenditures before and after injury. These are simply elements of proof to aid the jury, if at all, in determining impairment of ability to earn. Actually there may be an allowance of damages for impairment of earning capacity even in the absence of evidence of earnings lost or expenditures made for substitute labor. In fact, a person may have permanent disability but at the same time suffer no loss of earning power. Jurgens v. Davenport, R. I. and N. W. Ry. Co., 249 Iowa 711, 718, 88 N.W.2d 797, and 25 C.J.S. Damages § 87, page 951."

See also Carradus v. Lange, 203 N.W.2d 565, 568–569 (Iowa 1973).

Any question as to plaintiff's loss of earning capacity must be resolved adverse to defendant.

VII. Recalling the factual situation above set forth we turn now to the matter of damages for the value of plaintiff's loss of time and earnings, past and future.

As heretofore disclosed tax returns introduced in evidence show plaintiff's income dropped from $8000 in 1969 to $2568 in 1971.

Plaintiff also detailed his lessened workability by reason of accident-related injuries. Additionally, DeWall was compelled to abandon all hog production and curtail his dairy operations.

Under economic duress members of his family and neighbors understandably endeavored to perform the fulltime work which plaintiff was unable to do because of his physical condition.

There is no basis upon which a self-employed farmer may establish his or her injury-related loss of income with the degree of certainty comparable to that of a salaried person. In other words, there can be no fixed rule applicable in all cases regarding proof required as to loss of time and earnings which result from injury caused by negligence of another. See generally 22 Am.Jur.2d, Damages, §§ 91, 97; 25 C.J.S. Damages § 86.

Admittedly, plaintiff's labor replacement costs, if any, or fair value thereof were not shown. See Woode v. Kabela, 256 Iowa 622, 628–629, 128 N.W.2d 241 (1964). It still remains the jury could, upon the evidence here presented, calculate damages attendant upon plaintiff's claimed loss of time and earnings with sufficient reasonable certainty.

Touching on that subject this court said in Earl v. Clark, 219 N.W.2d 487, 490 (Iowa 1974):

"At the threshold defendant argues any evidence as to damages suffered by plaintiffs is so speculative and uncertain no monetary recovery should be allowed.

"That contention calls into play this often repeated statement last made by us in Northrup v. Miles Homes, Inc. of Iowa, 204 N.W.2d 850, 857 (Iowa 1973):

" 'Courts have recognized a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages. If it is speculative and uncertain whether damages have been sustained, recovery is denied. If the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated.'

"See also Holden v. Construction Machinery Company, 202 N.W.2d 348, 363–364 (Iowa 1972); 22 Am.Jur.2d, Damages, §§ 22–25; 25 C.J.S. Damages §§ 26, 28.

"It still remains, however, plaintiffs were required to establish their claim with some reasonable measure of certainty and show facts affording a reasonable basis upon which their damages could be ascertained. See Northrup v. Miles Homes, Inc. of Iowa, supra; Conrad v. Dorweiler, 189 N.W.2d 537, 540 (Iowa 1971)."

See also Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 655 (Iowa 1969); 12 Drake L.Rev. 59 (1962); Annot., 18 A.L. R.3d 88, 114–116.

We now conclude the jury was not called upon to assess plaintiff's damages for loss of time and earnings upon mere speculation, conjecture and surmise.

Affirmed in part, reversed in part and remanded for a new trial.