Jerry L. GARNES, and Bonita A. Garnes, Individually, and Nick Garnes and Chad Garnes, Minors, by Jerry Garnes, Their Father and Next Friend, Appellees,

v.

GULF & WESTERN MANUFACTURING COMPANY, also d/b/a E. W. Bliss Division, Appellant.

No. 85–1697.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1985.

Decided April 30, 1986.

Jack Hilmes, Des Moines, Iowa, for appellant.

Daniel J. Spellman, Perry, Iowa, for appellees.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

ROSS, Circuit Judge.

This products liability diversity case is controlled by Iowa law. The appellant, Gulf & Western Manufacturing Company (Gulf & Western), appeals from a judgment granting damages to Jerry Garnes for injuries sustained when he fell off of a forging press designed and manufactured by Gulf & Western. Gulf & Western contends that the trial court erred in instructing the jury. We agree and accordingly, reverse the judgment and remand for a new trial.

## FACTS

On August 29, 1981, Jerry Garnes' employer, Osmundson Manufacturing Company, assigned him the task of performing maintenance work on a forging press. The press had been manufactured in 1952 by Gulf & Western's E.W. Bliss Division and was located in Osmundson's plant in Perry, Iowa.

In order to perform the required maintenance, Garnes was first raised up to the top of the press' back shaft, a height of approximately ten feet, by a fork lift. He then climbed onto the back shaft and inspected the grease hoses inside the press. After removing a broken grease hose and throwing the broken hose and his tools onto the raised fork lift platform, Garnes attempted to step onto the fork lift platform. He missed, fell to the floor, and suffered a fractured vertebra, injury to his nervous system, and multiple abrasions and contusions.

Garnes then initiated this suit against Gulf & Western. His wife, Bonita, and two minor sons, Nick and Chad, joined in as plaintiffs. Originally, Garnes alleged both negligence and strict liability in tort claims, but the strict liability claim was withdrawn at the end of trial. Garnes' wife and two

minor sons' claims were for loss of consortium damages.

At trial, Garnes attempted to show that Gulf & Western was negligent in designing the press without a ladder, handhold, platform, catwalk, or railing. Garnes also contended that Gulf & Western was negligent in failing to provide workers with a warning of the dangers inherent in dismounting the press or with instructions on how to safely dismount the press.

The jury found in favor of Garnes and, by special verdict, announced that his damages totalled $493,000. Because the case had been submitted on a comparative negligence theory, the jury was also asked to apportion the responsibility for Garnes' damages. It did so as follows: Gulf & Western 70%, Garnes 30%, and Garnes' coemployees 0%.[1]

The jury also returned verdicts in favor of Garnes' wife and two minor children on their loss of consortium claims. Garnes' wife was awarded $10,000, while Garnes' two minor sons were awarded $2,500 each.

After judgment was entered, Gulf & Western filed a motion to amend the judgment and a motion for JNOV or a new trial. The trial court denied the motion for JNOV or a new trial, but granted the motion to amend and reduced Garnes' judgment by $4,734.70. This reduction gave Gulf & Western a credit for the amount which Garnes had received through settlement from his coemployees in a related suit and left him with a total judgment of $340,365.30.

On appeal, Gulf & Western argues that the trial court committed reversible error in giving three jury instructions. The three challenged instructions involve: 1) the design and warning duties owed by manufacturers; 2) stipulated facts; and 3) loss of consortium damages.

## DISCUSSION

### 1. Manufacturer's Duties Instruction

The trial court instructed the jury on the design and warning duties owed by manufacturers as follows:

A manufacturer is held to such reasonable skill, knowledge and diligence as that of experts in its field; that duty extends to the design of the product to protect those who will use the goods from unreasonable risk of harm while the goods are being used for their intended purpose. This duty extends to any person whom the manufacturer had reason to expect would be using the goods, whether or not the person using the goods was the actual purchaser, and the manufacturer is charged with the duty of making the product safe for the foreseeable use to which it might be put.

You are instructed that it is the law that the manufacturer of a machine has a non-delegable duty to make a machine that includes necessary safety devices.

You are instructed that it is the law that the manufacturer has a duty to produce a safe product with appropriate warnings and instructions where necessary.

The use of the Gulf & Western Bliss Forging Press by plaintiff at the time of his injury is to be considered by you as an intended purpose for the use of such product and is a use which a manufacturer should reasonably expect.

Instruction No. 11B. At an instruction conference, Gulf & Western objected to this instruction on the basis that Garnes had not engendered a submissible jury question on the duty to warn element contained in the third paragraph of the instruction.[2] Gulf & Western also objected to the

---

1. Garnes' coemployees were not parties to this action, but Gulf & Western contended that the coemployees had been negligent in positioning the fork lift platform.

2. As the following excerpt reveals, the objection was quite specific:

    With regard to warning, I do not think there is any sufficient evidence in the record to support a warning instruction, particularly when Mr. Garnes has stated that he knew what he was doing, he knew he could fall, and there is no duty to warn under circumstances where the perceived danger is open and obvious and known to the individual whom the warning is supposedly going to protect. To that extent, we would submit that there is no

instruction on the basis that it incorrectly stated a manufacturer's duties under Iowa negligence law.

Under Iowa negligence law, manufacturers are required to exercise reasonable care to design a product that is reasonably safe for its intended and foreseeable uses. *See Chown v. USM Corp.*, 297 N.W.2d 218, 220 (Iowa 1980); *Bengford v. Carlem Corp*, 156 N.W.2d 855, 864 (Iowa 1968). They are also required to exercise reasonable care to warn users of the dangers involved in using the product. *See Nichols v. Westfield Industries, Ltd.*, 380 N.W.2d 392, 400 (Iowa 1985); *Henkel v. R and S Bottling Co.*, 323 N.W.2d 185, 188 (Iowa 1982). But, "[w]here risks are known and obvious, there is no need for a warning under the standards" of care (*see* RESTATEMENT (SECOND) OF TORTS § 388 (1965)) adopted by the Iowa Supreme Court. *Nichols v. Westfield Industries, Ltd., supra*, 380 N.W.2d at 401 (*citing Strong v. E. I. DuPont de Nemours Co.*, 667 F.2d 682, 687–88 (8th Cir.1981) (plaintiff knew or should have known danger of pull-out in

gas pipes); *McIntyre v. Everest & Jennings, Inc.*, 575 F.2d 155, 159–60 (8th Cir. 1978) (tipping commode) ).

■ As a matter of law, the danger of falling from the forging press involved in this case was known and obvious. First, the danger of falling from a height in general, and from a slanted surface with no support in particular, is commonly known. Second, Garnes testified that he was familiar with the press (he had inspected or helped others inspect the press approximately twenty-five times within the year prior to the accident) and that he knew he was at a dangerous height while on the back shaft of the press. He further acknowledged that he had always been careful in mounting and dismounting the press because he did not want to slip and fall.

■ Reviewing the record[3] in the light most favorable to Garnes, we find no evidence upon which a reasonable jury could determine that Gulf & Western had a duty to warn.[4] Because it was wrong to submit

---

evidence that a warning was required in this case, and therefore, an instruction to that effect would be inappropriate.

Partial Transcript, Vol. 1 at 5–6 (January 21, 1985 instruction conference).

3. Garnes contends that we cannot review the submissibility of the duty to warn instruction because Gulf & Western failed to provide this court with a complete transcript of the trial testimony. Instead, Gulf & Western gave us a partial transcript of the trial consisting of Garnes' testimony on cross and redirect examination and testimony from two of Garnes' engineering experts.

By submitting the duty to warn instruction to the jury over Gulf & Western's objection, the trial court impliedly concluded that Garnes had engendered a jury question on this issue. Because Gulf & Western is contesting this conclusion on appeal it had a responsibility to "include in the record a transcript of all evidence relevant to such * * * conclusion." Fed.R.App.P. 10(b)(2). *See Brattrud v. Town of Exline,* 628 F.2d 1098, 1099 (8th Cir.1980). If Gulf & Western deemed a partial transcript sufficient for this purpose, it had a duty to file and serve on Garnes a statement of the issues it intended to present on appeal and a copy of its order of a partial transcript. Fed.R.App.P. 10(b)(3). *See Mandel v. Max-France, Inc.,* 704 F.2d 1205, 1206–07 (11th Cir.1983). That way, Garnes could have ordered additional parts of the tran-

script if he thought the partial transcript ordered by Gulf & Western was inadequate.

After oral argument, we asked Gulf & Western for, and received, an entire transcript of the trial. After reviewing the transcript, we see that the partial transcript originally provided by Gulf & Western included essentially all of the relevant evidence on the submissibility of the duty to warn issue. Therefore, we can consider this issue on appeal. We note, however, that Gulf & Western's failure to comply with Fed.R. App.P. 10(b)(3) has caused inconvenience and delay in resolving this appeal and could have resulted in our refusal to review the submissibility of the duty to warn instruction.

4. The closest case we could find to support Garnes' duty to warn theory is *Bandstra v. International Harvester Co.,* 367 N.W.2d 282, 286–87 (Iowa App.1985). In *Bandstra,* the court held that the plaintiff had submitted sufficient evidence to support his claim that the manufacturer of an auger had a duty to warn of the danger of falling into the auger. The case is distinguishable because the auger manufacturer was not the party responsible for the unguarded silo ladder from which the plaintiff fell. Thus, the case presents a duty to warn of the danger of falling *into* a piece of equipment, not *from* a piece of equipment. More importantly, however, the case is distinguishable because the plaintiff submitted evidence that the danger was

the duty to warn element to the jury, the judgment in favor of Garnes must be reversed and the case must be remanded for a new trial.

Gulf & Western's remaining objections to Instruction No. 11B and the other challenged instructions are likely to arise again on retrial. Therefore, we shall address them.

Gulf & Western challenges each paragraph of Instruction No. 11B. With respect to the first paragraph of the instruction, Gulf & Western challenges the statement that "[a] manufacturer is held to such reasonable skill, knowledge and diligence as that of experts in its field." According to Gulf & Western, it was improper to use the term "experts" because Iowa case law requires only that manufacturers exercise reasonable care in designing products.

■ The trial court concluded that the use of the term "experts" was not clear error[5] because the term is similar to the "state of the art" standard which is often used to determine whether a manufacturer has acted negligently in designing a product. In addition, the court noted that other courts apply an "expert" standard to manufacturers. *See Ross v. Philip Morris & Co.*, 328 F.2d 3, 13–14 n. 13 (8th Cir.1964) ("[e]ven in a negligence case, a manufacturer is held to the skill of an expert, is charged with superior knowledge of the nature and qualities of its products, and is obligated reasonably to keep abreast of scientific information, discoveries, and advances") (applying Missouri law); *Bradbury v. Ford Motor Co.*, 123 Mich.App. 179, 333 N.W.2d 214, 217 (1983) ("manufacturer is held to the knowledge of an expert"); W. PROSSER, *Torts* § 96 at 647 n. 63 (4th ed. 1971). We agree with the trial court's conclusion that the use of the term "experts" was not reversibly erroneous, particularly since the term "reasonable" was included in the challenged portion of the instruction.

■ With respect to the second paragraph of the instruction, Gulf & Western challenges the statement that a manufacturer "has a non-delegable duty to make a machine that includes necessary safety devices." Gulf & Western contends that the term "non-delegable" was misleading, confusing, prejudicial and unnecessary.

The trial court concluded that this instruction was necessary to avoid jury confusion on the issue of who had the duty to place safety devices on the press. Such confusion might arise, the court concluded, because Gulf & Western had attempted to show that Garnes' employer had such a duty.

The concept of non-delegability is legally correct in the context of this case. *See Bilotta v. Kelley Co.*, 346 N.W.2d 616, 624–25 (Minn.1984) ("a manufacturer may not delegate its duty to design a reasonably safe product"). Therefore, we conclude that the trial court did not err in instructing the jury on this concept.

■ The third paragraph of Instruction No. 11B is challenged on the theory that it overstated Gulf & Western's duty to warn and effectively advised the jury that Gulf & Western had a duty to produce an absolutely safe product. The challenged portion reads: "the manufacturer has a duty to produce a safe product with appropriate warnings and instructions where necessary."

In giving this instruction, the trial court relied heavily upon the fact that it was taken from the following statement: "A manufacturer's *duty to produce a safe product, with appropriate warnings and instructions where necessary,* rests initially on the responsibility each of us bears to exercise care to avoid unreasonable risks of harm to others." *Hall v. E. I. DuPont de Nemours & Co.*, 345 F.Supp. 353, 360 (E.D. N.Y.1972) (emphasis added). The trial court reasoned that the above statement

---

not open and obvious, so there was conflicting evidence in the record on that issue. Such evidence is entirely lacking in this case.

**5.** This alleged fault in the instruction had not been raised in Gulf & Western's objection to Instruction No. 11B.

must be an accurate description of the law because it was quoted by the Iowa Supreme Court in *Cooley v. Quick Supply Co.,* 221 N.W.2d 763, 769 (Iowa 1974).

The problem with this reasoning is that the statement does not define the standard of care owed by manufacturers, but rather, defines the source from which a manufacturer's duty of care derives. In fact, in *Hall,* the court specifically stated that the standard of care owed by manufacturers in negligence cases is "reasonable care". *Hall v. E. I. DuPont de Nemours & Co., supra,* 345 F.Supp. at 361. And in *Cooley,* the court specifically stated that a manufacturer's "duty to warn is not absolute" and is governed "by standards of reasonable care." *Cooley v. Quick Supply Co., supra,* 221 N.W.2d at 771. Because the statement in question is not a definition of the duty of care owed by manufacturers, it was not a proper source for a jury instruction on that duty. *See Johnson v. Bryant,* 671 F.2d 1276, 1281 n. 2 (11th Cir.1982) ("a jury may [not] be instructed in the language of an appellate opinion where such would be misleading").

The trial court also concluded that the instruction effectively informed the jury that they were to apply a reasonable care standard to the manufacturer's duty to provide warnings and instructions. This conclusion was premised on the fact that the instruction used the terms "appropriate" and "necessary". According to the court, these terms are synonomous with the term "reasonable".

"A district court 'has broad discretion in framing the form and language of the charge to the jury, and as long as the entire charge fairly and adequately contains the law applicable to the case, the judgment will not be disturbed on appeal.' " *Ferren v. Richards Manufacturing Co.,*

733 F.2d 526, 530 (8th Cir.1984) (*quoting Board of Water Works Trustees v. Alvord, Burdick & Howson,* 706 F.2d 820, 823 (8th Cir.1983)). The instruction at issue, however, fails this standard of review. The problem with the instruction is that it advised the jury that manufacturers have a legal duty to produce a "safe product". Because the instruction omitted a modifying adverb (i.e., "reasonably"), the duty stated is absolute. The terms "appropriate" and "necessary" do not modify the phrase "safe product" but rather, are dependent upon that phrase for their own meaning.[6]

"When a portion of a jury instruction is assigned as error, we are bound to consider the instruction as a whole." *Higgins v. Hicks Co.,* 756 F.2d 681, 684 (8th Cir.1985). Although other instructions given by the court correctly defined the reasonable care standard (*see* Instruction No. 7 defining "negligence" and "ordinary care") and correctly set forth the duties owed by manufacturers (*see* paragraph one of Instruction No. 11B), we conclude that the error in the third paragraph of Instruction No. 11B is not cured by reading it in conjunction with those instructions. At best, the jury would be confused by the erroneous instruction; at worst, the jury would be misled into following it as the law. Thus, we find that the third paragraph of Instruction No. 11B was reversibly erroneous.

Finally, Gulf & Western challenges the fourth paragraph of Instruction No. 11B on the basis that it removed a factual issue from the jury's consideration and thereby invaded the jury's province. This portion of the instruction stated: "The use of the Gulf & Western Bliss Forging Press by plaintiff at the time of his injury is to be considered by you as an intended purpose for the use of such product and is a use

---

**6.** Gulf & Western argues that the second paragraph of Instruction No. 11B has the same defect as the third paragraph because it uses the phrase "necessary safety devices". The two paragraphs are entirely different, however, because the second paragraph refers to a "machine" where the third paragraph refers to a "safe product".

Similarly, Gulf & Western has argued that the second sentence of the first paragraph of Instruction No. 11B is defective because it states: "the manufacturer is charged with the duty of making the product safe for the foreseeable use to which it might be put." On retrial it would be better to insert the word "reasonably" before the word "safe".

which a manufacturer should reasonably expect."

The trial court concluded that the instruction was proper because the evidence clearly established that Garnes' use of the press was an intended and foreseeable use. In particular, the court observed that the maintenance work which Garnes was performing at the time of the accident had been recommended by Gulf & Western.

■ In the federal court system, trial judges are free to summarize and comment upon the evidence, as long as the comments are fair and unbiased and the judge "makes it clear to the jury that all matters of fact are submitted to their determination." *Quercia v. United States,* 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933). *See United States v. Singer,* 710 F.2d 431, 436 (8th Cir.1983) *(en banc); Haines v. Powermatic Houdaille, Inc.,* 661 F.2d 94, 95–96 (8th Cir.1981); E. DEVITT & C. BLACKMAR, *Federal Jury Practice and Instructions,* § 8.04 at 248–53 (3rd ed. 1977).

■ Here, the trial court failed to leave the factual determination to the jury. However, no reversible error was caused by the instruction because Gulf & Western does not dispute the fact that Garnes' use of the press was an intended and foreseeable use and, in any event, Gulf & Western did not object to this portion of the instruction. *See W. B. Farms v. Fremont National Bank & Trust Co.,* 756 F.2d 663, 667 (8th Cir.1985).

### 2. Stipulated Facts Instruction

Gulf & Western also objects to an instruction which contained the parties' pretrial stipulation. The facts contained in the pretrial stipulation had been read to the jury at the commencement of the case. However, "because of the length and complexity of the stipulation," the trial court determined that "the jurors would not recall it when they began their deliberations." Slip op. at 9. The stipulated facts instruction was used to remedy this problem.

■ Gulf & Western objected to the instruction and now contends that the instruction unduly highlighted the admitted facts. Gulf & Western also contends that the trial judge improperly commented upon the evidence by reading the instruction. We find no merit to this claim. *See supra* at 643.

### 3. Consortium Damages Instruction

Gulf & Western's final objection is to the court's instruction on the consortium claims asserted by Garnes' wife and two minor sons. This instruction informed the jury that the damages recoverable under the consortium claims "include services of and loss of pecuniary support from the injured spouse * * * [and] parent." Instruction No. 23. Gulf & Western objected on the basis that the instruction enabled the jury to award a double recovery.

■ We summarize Gulf & Western's double recovery argument by paraphrasing *DeWall v. Prentice,* 224 N.W.2d 428 (Iowa 1974):

> In summary [Gulf & Western] here argues (1) instruction[s] [No. 19 and 20] allowed recovery of damages by [Garnes] for lost earnings; (2) instruction [No. 23] permitted [Garnes' wife and two minor sons] an additional award for loss of services *and support* as a parent and spouse; * * * [3] the sum by which [Garnes'] earnings were reduced would be the same amount by which *support* to his wife and children would be diminished; and [4] absent an appropriate instruction telling the jury loss of *parental and interspousal support* could not [include] loss of earnings the jury was permitted to award double damages.

*Id.* at 433 (emphasis in original). We respond to Gulf & Western's argument by again paraphrasing *DeWall:*

> We are persuaded the instructions given as aforesaid, without a related instruction precluding an allowance for both lost earnings *and* loss of support as a parent or spouse, to the extent such lost earnings would be the source of any

loss of support, enabled the jury to award * * * duplicate damages.

*Id.* at 434 (emphasis in original).

Contrary to the trial court's conclusion, nothing in *Madison v. Colby*, 348 N.W.2d 202 (Iowa 1984) suggests that both the injured party and the consortium claimants are entitled to recover the injured party's lost earnings. In *Madison*, the court did state that consortium includes "both the tangible and intangible elements" of loss described in *Acuff v. Schmit*, 248 Iowa 272, 78 N.W.2d 480, 481–82 (1956)[7] and that it "means the same thing as 'services' in section 613.15" of the Iowa Code.[8] *Id.* at 208. The court also held that "the right to sue for and recover for the pre-death loss of consortium", including the tangible loss of services element, belongs to the "deprived spouse, not the injured person." *Id.* at 209. But, the court also stated:

> This interpretation does not affect the separate and independent right of the injured person to recover for loss of support, as distinguished from loss of services. *Recovery for the support element* is intended to replenish the family exchequer and *plainly belongs to the injured person* under the statute until the injured person's death.

*Id.* (emphasis added). In view of both *De-Wall* and *Madison*, we conclude that the

inclusion of the "loss of pecuniary support" element in the consortium instruction improperly permitted the jury to award a double recovery.

The judgment of the district court is reversed and the case is remanded for a new trial.

---

**7.** The elements of consortium loss were described in *Acuff* as follows:

> "Consortium" at common law included not only conjugal fellowship of husband and wife but also service as a prominent, if not the dominant, factor; not so much the service resulting in the performance of labor or the earnings of wages, as the service which contributed and assisted in all the relations of domestic life. * * * This concept of the term became known as the "material" or "practical" version. As the attitude of the courts toward the status of husband and wife, one to the other, changed, a more modern and limited version thereof was adopted by various jurisdictions. Under it the term "consortium" was limited to "the right which husband and wife have to each other's society, comfort, and affection" * * * and has become known as the "sentimental version". This Court has defined it as "conjugal fellowship of husband and wife; and the right of each to the company, cooperation, affection and aid of the other in every conjugal relation".

*Acuff v. Schmit*, 248 Iowa 272, 78 N.W.2d 480, 481–82 (1956).

**8.** This statutory provision states:

> In any action for damages because of the wrongful or negligent injury or death of a woman, there shall be no disabilities or restrictions, and recovery may be had on account thereof in the same manner as in cases of damage because of the wrongful or negligent injury or death of a man. In addition she, or her administrator for her estate, may recover for physician's services, nursing and hospital expense, and in the case of both women and men, such person, or the appropriate administrator, may recover the value of services and support as spouse or parent, or both, as the case may be, in such sum as the jury deems proper; provided, however, recovery for these elements of damage may not be had by the spouse and children, as such, of any person who, or whose administrator, is entitled to recover same.

Iowa Code Ann. § 613.15.